## NELSON, Plaintiff-Appellant, v INDUSTRIAL COMMISSION, Defendant-Appellee.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20589.    Decided September 29th, 1947.

418

A. M. Kaplan, Cleveland, for plaintiff-appellant.
C. S. Bernard, Cleveland, for defendant-appellee.

**OPINION**

By HURD, PJ.

This is an appeal on questions of law from the judgment of the Common Pleas Court of Cuyahoga County which directed a verdict for the defendant at the close of plaintiff's testimony and rendered judgment accordingly.

The action was filed as an appeal from the final order of the Industrial Commission, disallowing plaintiff's application for death benefits as the result of the death of Robert Nelson, deceased, the husband of the plaintiff. The principal question presented on the issues joined is whether or not death was due to an accidental injury sustained while in the course of and arising out of decedent's employment.

There is ample evidence in the record tending to show that the decedent died at or about 4 P. M. on Jan. 13, 1943 during the course of his employment with The L. M. Gunderson Company, while in a crouched position on one knee, engaged in screwing a heavy machine (weight about ½ ton) to a wooden floor by means of a twelve inch wrench.

On the day of his death, when decedent left home to go to work he appeared to be "all right." Previously he had two accidents, one in 1940 and the other the latter part of December, 1942, at which time the decedent strained himself over his abdomen, following the lifting of a very heavy metal electric box weighing between 300 and 600 pounds, while working in company with three other men; as a result of this latter strain in December, 1942, he went to a doctor for attention and treatment. The evidence further shows that on the day of his death he was required to "spot" a heavy piece of machinery and bolt it to the floor, this being done by dragging the

machine to the exact spot where it was marked to be bolted to the floor.

One witness testified that he noticed the decedent's face was very flushed when seen in the crouched position necessary to do the bolting and this witness further testified that "you have a feeling of pressure in the chest when tightening the bolt" and that "it requires an exertion to pull the wrench."

Plaintiff proffered and the court rejected certain testimony of one Dr. Wilson Chamberlain, a former County Coroner, who qualified as an expert medical witness, to the general effect that there was a causal relationship by way of acceleration and aggravation between the work the decedent was doing and his death; further that the decedent had suffered an undue strain by reason of his exertion while in a crouched position causing a breakdown of his arterial system, resulting in his death by a probable cerebral hemorrhage.

The court also rejected proffered testimony by the same expert witness to the effect that working in the crouched position and doing the kind of work decedent was doing at the time, placed a greater strain on the heart and vascular system; that the general circulation was interfered with and that the compression of the muscular wall and compression of the abdominal contents and organs had a tendency to raise the blood pressure by interference with the circulation and still further raised the blood pressure because an individual is unable to breathe as well under such circumstances; further that such effort caused an acceleration or aggravation of the condition of arteriosclerosis and an aggravation of the vascular condition and that therefore death was due directly to the undue strain or extra strain which was put upon the heart and circulatory system.

Many other hypothetical questions and answers by way of proffer in the record were rejected by the court. This testimony, we think, was competent and material as bearing upon the issue of accidental injury and resultant death in the course of employment. The rejection of this testimony constituted prejudicial error.[1]

The court also excluded the reasons for the expert opinion, the proffered answer of the expert containing in one instance some 500 words explaining at some length the rea-

---

1. See *Peer appellant* v *Industrial Comm. 134 Oh St 61*.

See also, *Maynard appellant* v *Goodrich, 72 Oh Ap 445* wherein the court of appeals held that the trial court erred in excluding proffered answers of a medical witness to the same general effect. This case was affirmed by the supreme court in *144 Oh St 22*, wherein that court held that the question presented was one for the jury.

.son for his opinion. That the action of the trial court in so .doing constituted prejudicial error has heretofore been decided by this court.[2]

The courts of Ohio likewise have decided that under certain circumstances a strain caused by exertion in the course of employment is an accidental injury which is compensable and that whether or not in a particular case there was an accidental injury within the meaning of the Workmen's Compensation Act as distinguished from disease, is a question of fact for determination by the jury under proper instructions by the court.[3]

---

2. *Squire* v *Industrial Comm.* (decided July 1, 1946) *46 Abs 392, Ryan appellant.* v *Industrial Comm.* (decided Dec. 16, 1946). *47 Abs 561.*

3. *Industrial Comm.* v *Parry, 37 O. L. R. 4* (Ct. of Appeals) (there was evidence showing that permanent disability was caused by sudden strain on heart.)

*Tinker, appellant* v *Firestone Tire Co. 19 Abs 227* (directed verdict by trial court reversed by court of appeals. Claimant while performing usual work which required strenuous work, sustained injury to shoulder muscles. Held, jury question.)

*Saupe, appellant,* v *Industrial Comm. 69 Oh Ap 519* (death from cerebral hemorrhage which doctor attributed to strain and increased blood pressure. Court of Appeals in reversing directed verdict for defendant by trial court held; "Death of an employee suffering from diabetes and arteriosclerosis as result of an artery in brain splitting because of strain and increased blood pressure which resulted from his being subjected to working conditions to which he was unaccustomed, is a result of an injury as defined in §1465-68 G. C.")

*Parletto* v *Industrial Comm. 140 Oh St 12* (supreme court held: question of fact for jury whether inguinal hernia was result of injury due to unusual effort.)

*Phillips* v *Industrial Comm. 57 Oh Ap 10* (Question of aggravation of stomach ulcers by lifting heavy rocks. Court of Appeals reversed a judgment for defendant where trial court charged that employee could not recover unless he showed by preponderance of evidence that the injury was occasioned while in the performance of an unusual burden.)

*Industrial Commission* v *Heinlein, 47 Oh Ap 50* (disability claimed due to strain in course of employment. Court of Appeals held question of fact for jury.)

*Industrial Commission* v *Harney, 30 O. L. R. 559* (Death of an employee from angina pectoris due to heavy strain and exertion in course of employment. Court of Appeals affirmed verdict for plaintiff.)

Smith v Goodyear Tire Co. appellant 21 M & S Rep. 330 (Court of Appeals of Summit County.) (Claimant accustomed to swinging himself down from platform and claimed to have aggravated an arthritic condition of wrist. Court of Appeals reversed judgment of directed verdict holding there was evidence in the record tending to prove an injury sustained in course of employment accidental in character. Held, under amendment of §1465-90

We think the instant case must be distinguished from the case of Bayer v The American Shipbuilding Company, decided by this court Nov. 4, 1946, 72 N. E. (2) 394, wherein plaintiff caught cold "as the result of working in very severe weather which later developed into a pleuritic condition with a possible pneumonia."

From a thorough examination of the record in this case we conclude that there was prejudicial error in the exclusion of expert medical testimony proffered by plaintiff and in the direction of a verdict by the court for defendant at the close of plaintiff's testimony.

We hold that with the inclusion of the proffered testimony there was ample evidence of probative value from which an inference could be drawn by the jury that the death of decedent was due to an accidental injury while in the course of and arising out of his employment.

Therefore, the judgment is reversed and the cause is remanded for further proceedings according to law. Exception.

MORGAN, J, concurs. SKEEL, J, dissents. (see dissenting opinion)

## DISSENTING OPINION

By SKEEL, J. (DISSENTING)

This appeal comes to this Court on questions of law from a directed verdict for the defendant in the trial court.

The plaintiff's husband shortly before and until the time of his death, was an employee of The L. M. Gunderson Company. The Gunderson Company was a contributor to the fund administered by the defendant. On the 13th day of January, 1943, the plaintiff's husband, Robert Nelson, died while he was at work. A claim was filed by the plaintiff with the defendant, as provided by law, for compensation under the Workmen's Compensation Act, it being the claim of the plaintiff that the deceased came to his death as a result of an accident while he was acting in the course and scope of his employment. Upon

---

G. C., as construed in *Malone case 140 Oh St 292* and the *Maynard case, 144 Oh St 22*, there were questions of fact for determination of a jury.)

See also: *Industrial Comm. v Cleek, 13 Oh Ap 417, Cornett, appellant v Industrial Comm. 20 O. L. R. 364, Davis v American Rolling Mills 54 O. A. R. 298 Bauer v Industrial Comm. 144 O. A. R. 104 Ohio Public Service Co. v Peters 8 O. L. A. 297 Maynard, appellant v Goodrich, 72 O. A. R. 445* Vargo v Industrial Comm. 8 M & S Rep 313. (Ct. of Appeals Stark County.)

hearing and rehearing, the right to participate in the Workmen's Compensation Fund as provided by law, was denied. Whereupon the plaintiff appealed to the Common Pleas Court and upon trial that Court, as above indicated, at the conclusion of plaintiff's evidence, granted defendant's motion for judgment and judgment was entered for the defendant.

The record discloses that the deceased was a millwright, and as such had been employed by The L. M. Gunderson Company for about two or three weeks prior to January 13, 1943. The work which was being done during that time was in the new plant of The Thompson Products Company in Euclid, Ohio.

At the time in question, the deceased was engaged in setting and bolting a power hack-saw to the wooden block floor. Some weeks prior to January 13, 1943, probably about two weeks (the evidence not being clear on this point) while the deceased was helping to carry a heavy box the weight of the box was shifted to the deceased. After the box was laid down, one employee heard deceased say, "goddamit, it hurt me." Two other employees testified that on this occasion the deceased said, "it bothered me, strained me or something."

The plaintiff also testified on this question as follows:

"He held his hands on his stomach and he said 'I hurt myself'—that is the time he complained."

The deceased went to a doctor on this occasion but the doctor's records fail to disclose what treatments, if any, were administered. The doctor testified that December 15, 1942, was the last call the deceased made to his office for treatment according to his records. The record tends to establish that the doctor told an investigator for the Industrial Commission that the deceased had called at his office between Christmas and New Years, claiming an injury while lifting a heavy object and that he had a pain in his stomach. The doctor testified that he had no recollection of the incident and that if the deceased did come in for treatment, the reason why no record was made was because "most of my work is physiotherapy work; that is treating sprains, bruises and joint pains. That happens every day in my work. You might have treated somebody for 'this hurts me; that hurts me' and we make a mental note of it but we don't always put it on paper. * * * "

In all events, the occasion was not again referred to by the deceased and did not cause him to stay away from work. He was on the job every work day thereafter until January 13, 1943, the day of his death, and there is no evidence as to the character of any physical injury, if any, suffered at that time.

On the day of his death he was engaged in carrying on his usual duties in the usual way. Just before his death he was down on his knees or at least on one knee, bolting a power hack-saw to the wooden block floor. The plaintiff's witness, Moran, a fellow-workman was asked:

"Q. Does it require any exertion when you are down there to tighten those bolts solid to the floor?

A. Oh no, just to swing your arm.

Q. You have to swing your arm and pull on it to tighten it?

A. Sure, of course you would understand that on the block floor with the grain of the wood we would take a drift pin and make part of the hole and then start the lag and then screw it down into the wood, that is all."

Another fellow workman engaged in doing the same kind of work, testified:

"Q. Now then, in order to screw the bolt into the floor, how did you observe Mr. Nelson performing that just before —or did you observe whether or not Mr. Nelson began to do the work required to screw the bolt into the floor?

A. No, I wouldn't give it any thought. We were both doing the same kind of work and while I was doing mine he would be doing his.

Q. Well, did you get a chance to look over and see what he was doing at any time while that work was being done?

A. Well, I had a chance but I wouldn't know as I looked at him; I wouldn't know if I even looked at him while we were working.

Q. What was the first thing that attracted your attention to Mr. Nelson?

A. I think the fact that he didn't answer. The men are always talking one way or the other, and as I remember, he didn't answer me; he wasn't paying any attention to what I was talking about.

Q. Then what did you do?

A. I don't recall whether I spoke to him. I looked over there and he wasn't moving but he was in the natural position that he would be for doing the work, and I only recall that I went to him and I saw that there was something wrong— he wasn't moving or answering and I called these other two boys.

Mr. Petro: Move to strike the conclusion that something was wrong. The fact that the man wasn't moving is sufficient.

Referee: Overruled.

Mr. Petro: Exception.

Q. When you looked over—what position was he in after you noticed that he wasn't talking and you looked over? You say he was in his natural position for his work? What position was that?

A. Well, he had one knee on the floor and it is a low machine and it projected on the side and his shoulder was on the machine, leaned over like you would if you was on your knee to work on the floor with your hands.

Q. Do you recollect whether he had any tool in his hands?

A. I wouldn't recollect whether he had one in his hands at that minute or not. Of course, he had one while he was screwing the bolt in. He might have dropped it, I don't remember.

Q. What tool was he using in the performance of his work, do you know?

A. He was using a twelve-inch crescent wrench to tighten these bolts.

Q. Now, after you had called these two other men over did you observe what was done—or did you observe the facial appearance of Nelson?

A. They laid him with his head down and you didn't see but when they laid him down on his back with something under his head, some overalls or something, his face was red, very red, dark red. I know it was mentioned at the time.

Q. And after that what was his facial appearance did you notice?

A. Well, as I recall, the redness went away to a certain extent; he was more of a white, it seems to me, I wouldn't like to—

Q. And did you notice whether or not there was any movement about him after he was laid down flat on the floor to your recollection?

A. No movement, as I recall.

*   *   *   *   *   *   *   *

Q. You were working on one side of the machine and Mr. Nelson was working on the other side of the machine?

A. Yes.

Q. Doing the identical work, is that right?

A. That is right.

Q. Therefore, the tightening of the bolts in drilled holes into the cement was not a strenuous job, was it?

Mr. Kaplan: Objection.

Referee: He may answer.

A. No.

Q. And you did your job without any difficulty isn't that correct?

Mr. Kaplan: Objection.

Referee: He may answer.

Q. I mean, did you find any difficulty in doing your work, tightening these bolts down in there?

A. No.

Q. Therefore, it did not require any strenuous exertion on your part did it?

Mr. Kaplan: Objection.

Referee: He may answer.

A. No, not for tightening the bolts."

The testimony of the other employee, Charles Kopp, on the character of the work being done at the time the deceased died, was as follows:

"Q. Can you place yourself in the position that you were in on the 13th of January, tightening the bolt down on one knee? I want you to describe whether or not you have any feeling of pressure when you are tightening that bolt?

A. You do, when you pull the wrench.

Q. And that requires exertion to pull the wrench?

A. Of your arms—arms exertion.

Q. And at that time you have to be down on one knee to get down to use the wrench?

A. That is the most convenient posture to be in to do that work."

The medical evidence shows that in 1942 the deceased, a man of almost 63 years of age, was suffering from cerebral thrombosis, his vascular system was not normal, he had a slight enlargement of the heart and there was evidence of general arteriosclerosis and a slight paralysis of one side of the face and in the right shoulder, right arm and leg. The

death certificate shows the cause of death as probably cerebral hemorrhage and general arteriosclerosis.

Under the facts as thus developed by plaintiff's evidence, it is perfectly clear that the decedent did not suffer an accidental injury while acting in the course and scope of his employment which in the slightest degree could be said to be a contributing cause of his death.

The case of Cordray v Industrial Commission is decisive of the question here presented. In that case, a lineman climbed to the top of a high pole nearly 100 feet in height. Upon reaching the top he adjusted his safety belt. He was next seen to be falling but his safety belt stopped the fall and when brought to the ground by his fellow employees he was found to be dead, the cause of death being cerebral hemorrhage.

The court on page 180 says:

"Here, in the instant case, the question: Is plaintiff's evidence which shows merely that an employee died from a cerebral hemorrhage suffered while engaged in the performance of his regular duties consisting of heavy work, sufficient to withstand the motion of defendant for a directed verdict?

As stated in the case of Goodman v Industrial Commission, supra: 'Whatever the rule in other jurisdictions may be, the Supreme Court of Ohio, through a long line of decisions has consistently defined the meaning of the term 'injury' as used in the Constitution and statutes, to be physical or traumatic injuries, accidental in their origin and cause; the result of a sudden happening at a particular time.' "

In the case of Bayer v American Shipbuilding Company, 72 N. E. Rep. (2d) 394, this court in defining a compensable injury under §1468-6c GC, said:

"From an examination of the authorities we conclude that there is a line of demarcation where there is merely a health hazard and cases where there is a physical traumatic injury accidental in origin and character in the sense of being a sudden mishap occurring by chance and not in the usual course of events."

The authority for the rule as thus stated is the case of **Malone v Industrial Commission, 140 Oh St 290;** paragraph 1 of the syllabus reads:

"The term 'injury' as used in the Constitution and in §1465-68 GC (117 O. L. 109) as amended, effective June 10, 1937, comprehends a physical or traumatic damage or harm, acci-

dental in its character in the sense of being the result of a sudden mishap occurring by chance, unexpectedly and not in the usual course of events, at a particular time and place."

And on page 300 the court said:

"To restate the rule under the present statute, the term 'injury' as used in the Workmen's Compensation Act comprehends a physical or traumatic damage or harm, accidental in its origin and character in the sense of being the result of a sudden mishap occurring by chance, unexpectedly and not in the usual course of events, at a particular time and place. This court is still committed to the proposition that a compensable injury under the Workmen's Compensation Act must be accidental and traumatic in character. This is necessary to differentiate compensable injury from disease, and except occupational diseases for which special provision has now been made under the law. Such holding, to the effect that a compensable injury must be accidental and traumatic in character, is in harmony with the holdings of practically all courts of last resort of states where Workmen's Compensation Acts are in force."

There being no evidence of a traumatic injury, the plaintiff was not, as a matter of law, entitled to participate in the Workmen's Compensation Fund, and the Court correctly entered judgment for the defendant at the close of the plaintiff's case. This being so, the hypothetical question which was asked of Dr. Chamberlain could have no significance in the case and the court's refusal to permit the witness to give the reasons for his answer, while erroneous, did not prejudice the plaintiff's rights.

The judgment should, therefore, be affirmed.