THOMAS, APPELLANT, v. KELLER, ADMR., BUREAU OF WORKMEN'S COMPENSATION, ET AL., APPELLEES.

[Cite as Thomas v. Keller, Admr., 9 Ohio App. 2d 237.]

(No. 3055—Decided January 31, 1967.)

*Messrs. Gallon & Miller,* for appellant.

*Mr. William B. Saxbe,* attorney general, and *Mr. William A. Rogers, Jr.,* for appellees.

CRAWFORD, J. Appellant, Melissa Thomas, widow-claimant, has appealed from a judgment for the defendants notwithstanding the verdict in the Court of Common Pleas upon motion of the defendants, appellees herein, after a verdict in favor of claimant.

Claimant had regularly appealed to the Court of Common Pleas from unfavorable administrative decisions.

Upon a motion for judgment notwithstanding the verdict, neither the trial court nor the Court of Appeals nor the Supreme Court may weigh the evidence. Section 2323.18, Revised Code; *McNees* v. *Cincinnati Street Ry. Co.* (1949), 152 Ohio St. 269. The court will consider the evidence only for the purpose of determining whether there is any evidence of substantial probative value in support of the claim or defense of the party against whom the motion is made, and, in so doing, is required to construe the evidence most strongly in favor of the party against whom the motion is made. 31 Ohio Jurisprudence 2d 661, 662, Judgments, Section 208. Although the briefs contain considerable argument upon the evidence, and that adduced by the parties differs in several particulars, we apply the test stated to the evidence of the claimant.

Claimant has offered proof that at 7 a. m. on January 19, 1960, her decedent, John Thomas, then 47 years of age, started work as a bailer for defendant Allen Cartons, Inc.; that he had previously suffered from arteriosclerotic heart disease, after treatment for which he had been discharged from the hospital in 1957 with no limitations upon his physical activities and no further medication; that his work as bailer for Allen Cartons, Inc., consisted of picking up by hand and placing in a bailing machine scraps of corrugated boards; that this scrap would become tangled; that he would pick up from the floor fifty to one hundred pounds at a time and lift it over his head; that he did

the work ordinarily assigned to two men in order to keep up with three cutting machines which were in operation and which turned out the scrap; that the room where he worked was very hot and poorly ventilated; that in an effort to keep up with the cutting machines, he sweated and strained at his work; and that he collapsed while at work, was taken to the hospital, and died at 8:47 a. m. of myocardial infarction.

Plaintiff (claimant) produced an expert medical witness, Dr. Benjamin Schuster, who testified, in answer to a hypothetical question that the occurrence hastened the decedent's death, that "the strain precipitated a series of physiological event[s] which so altered the normal hemo-dynamics of the circulation that it resulted in his development of the acute coronary occlusion and subsequent death."

When asked whether the occurrence substantially hastened death, the doctor answered:

"I feel that it did substantially hasten his death by virtue of the fact that it precipitated a train of events which resulted in the coronary occlusion with resulting myocardial infarction."

In other words, the medical expert gave his opinion that the occurrence did substantially hasten death, and stated his reason. Asked to pin down the precise period of time by which death was substantially hastened, he answered, "No one knows," and, "I don't think one can answer that. Can one predict death outside the electric chair? I mean the exact hour of the day, the minute of the day, the second of the day?" This is an obvious truth, applicable to all cases. Failure to state precisely what is unascertainable in any case cannot invalidate the jury's conclusion that death was substantially hastened.

The verdict of the jury was in the usual form, finding the claimant entitled to participate in the State Insurance Fund.

The jury also made these two special findings in response to interrogatories, as follows:

"No. 1. Did the decedent, John Thomas, have an accidental injury on January 19, 1960 in the course of and arising out of his employment at Allen Cartons, Inc.

"Answer: Yes.

"No. 2. If your answer to Interrogatory No. 1 is Yes, then did such accidental injury directly and proximately accelerate

his death from a pre-existing heart condition by a substantial period of time.

"Answer: Yes."

Counsel have thoroughly briefed the issues showing the historical development of the statutes and decisions. From all the authorities, certain determinative principles emerge.

First of all, the Supreme Court has held that compensable injuries as now defined by Section 4123.01 (C), Revised Code, encompass such an episode as that which claimant has endeavored to present.

Before the statute, Section 4123.01 (C), Revised Code, defining compensable injury, appeared in its present form in 1959, there was some uncertainty as to cases involving episodes and conditions like the present. They were held compensable in the cases of *Malone* v. *Industrial Commission* (1942), 140 Ohio St. 292; *Maynard* v. *B. F. Goodrich Co.* (1944), 144 Ohio St. 22; *Nelson* v. *Industrial Commission* (1947), 49 Ohio Law Abs. 417. However, a more conservative view found expression in *Dripps* v. *Industrial Commission* (1956), 165 Ohio St. 407, and *Davis* v. *Goodyear Tire & Rubber Co.* (1959), 168 Ohio St. 482.

The pertinent portion of the statute now reads:

"(C) 'Injury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment."

The statute in this form has been construed to cover such a claim as that made by claimant. *Hearing* v. *Wylie, Admr.* (1962), 173 Ohio St. 221. That case was followed in *Winstead* y *Young, Admr.* (1963), 119 Ohio App. 144.

We have the benefit of the opinion of the trial judge. He was apparently impressed by the argument that this event occurred in the usual course of decedent's employment and could not, therefore, be considered accidental. However, so far as decedent himself was concerned, this was his first day on the job. In addition, claimant produced evidence that it was unusual in this job to have only one man bailing the waste from three cutting machines. Defendants produced a witness who said that this was never done. If not, and if claimant's evidence is to be

believed, it was unusual to have one man working alone. Construing the evidence most favorably to the claimant, it is proper to infer that this was an unusual situation.

The trial judge also expressed the view that the testimony of claimant's medical expert, Dr. Schuster, was weakened by his failure to specify a *definite period* of time by which death was hastened. Obviously, as the witness stated, and as we have already observed, such a question can never be answered precisely. Whether it was accelerated by a substantial time, as testified by the doctor, is a question for the jury. The court apparently concurred in this view when it submitted the special interrogatory asking that question. In answering it, the jury had a right to consider not only the doctor's opinion, but also decedent's recovery from his earlier attack, his apparent good health when starting to work prior to the incident (although this is disputed in the evidence), and the fact that the conditions under which he worked were conducive to a further attack. With these facts before them, the jury found that death was accelerated by a substantial period. This finding is adequately supported by the evidence.

The case of *McKee* v. *Electric Auto-Lite Co.* (1958), 168 Ohio St. 77, was relied upon by the trial court in this connection. In that case, decided before the present form of the statute, the syllabus reads:

"Under the Workmen's Compensation Act, death from a pre-existing cause and accelerated by an accidental injury, in the course of and arising out of employment is compensable, where the death is accelerated by a substantial period of time as a direct and proximate result of the accident."

However, recovery was denied. That decedent previously suffered from arteriosclerosis, then cut his finger in a drill in the course of his employment and died eight days later of the pre-existing disease. His heart was so severely damaged that his continuing to live from day to day prior to the accident appeared to be something of a miracle. The court analyzed the medical expert's testimony not only as a failure to state that there was any acceleration of death due to the injury to the finger, but also as a failure to state even that there was any

direct causal relationship. That jury made no finding of substantial acceleration. The sharp differences between that case and this are clearly apparent.

The trial court in the present case took the course permitted by Section 2323.181, Revised Code, when confronted with two motions simultaneously, one for judgment (or judgment notwithstanding the verdict), and one for a new trial, by sustaining the former and sustaining the latter conditionally, the new trial to be granted in the event the judgment was reversed.

The sustaining of the motion for new trial is not separately briefed or argued. It reflects no abuse of discretion and will, therefore, not be disturbed. 3 Ohio Jurisprudence 2d 771, Appellate Review, Section 796.

For the reasons given, the judgment for the defendants will be reversed and the cause remanded to the Court of Common Pleas for further proceedings according to law.

*Judgment reversed.*

SHERER, P. J., and KERNS, J., concur.