ACKERMAN, APPELLEE, *v.* KELLER ET AL., APPELLANTS.

(No. 10891—Decided April 13, 1970.)

*Messrs. Otto F. Putnick* and *Mr. Haskell Bazell,* for appellee.

*Messrs. Paul W. Brown,* Attorney General, and *Mr. W. Luke Leonard,* for appellant Elmer A. Keller.

*Messrs. William A. McClain, Mr. Richard A. Castellini* and *Mr. Donald E. Hardin,* for appellant city of Cincinnati.

*Per Curiam.* This is an appeal upon questions of law from a judgment and order of the Court of Common Pleas for Hamilton County that plaintiff, appellee herein, is entitled to participate in the Workmen's Compensation Fund.

Joseph J. Ackerman, plaintiff's decedent, had been employed as a firefighter by the city of Cincinnati for a number of years prior to his death. It appears that he suffered from a heart condition and, accordingly, had been transferred from a fire training center to a suburban fire station.

During the morning of June 3, 1963, Ackerman, with other members of his fire company, was engaged in the inspection of homes and business premises for the pur-

pose of determining and correcting fire hazards. Such activity was routine duty during the spring and summer months of each year, and Ackerman had participated in such inspections on other occasions. As Ackerman left the last house assigned to him for inspection, he was seen to be perspiring profusely. Weather bureau records received in evidence upon the hearing established that on June 3, 1963, the temperature rose from 69 degrees to 76 degrees between 8 A. M. and 1 P. M. and that the relative humidity was 81 per cent at 8 A. M., 68 per cent at 9, 61 per cent at 10, 55 per cent at 11 and 59 per cent at noon.

Ackerman and his fellows returned to the station house for lunch. Since he was the cook for his unit, Ackerman procured food from a grocery and prepared it for the men. However, he ate very little, complaining of "indigestion," and was permitted to retire to the dormitory to rest. Subsequently, a noise described as a "crash" was heard and Ackerman was found arising from the floor near his bed with his forehead lacerated. He was sent to the hospital immediately and remained there under treatment until June 16, 1963, when he expired as a result of a myocardial infarction, septal, with severe generalized arteriosclerosis as the underlying cause of death.

Plaintiff filed an application for benefits and, after her claim was denied at the administrative level, she appealed to the Court of Common Pleas. A trial without the intervention of a jury resulted in a finding by the court that Ackerman suffered an injury in the course of and arising out of his employment, which occasioned the appeal here.

The single assignment of error is that the court erred in finding that the customary activities of the decedent, in walking up and down steps while on a housing inspection as a part of his normal duties, in temperatures ranging between 52 degrees and 82 degrees were of such an unusual nature as to constitute an injury within the scope of R. C. 4123.01.

R. C. 4123.01 (C) provides:

" 'Injury' includes any injury, whether caused by external accidental means or accidental in character and re-

sult, received in the course of, and arising out of, the injured employee's employment."

Courts in Ohio have long been wrestling with problems presented by the phrase "accidental in character and result" in cases where injury is claimed in the absence of trauma.

In 1942, the Supreme Court decided *Malone* v. *Industrial Comm.*, 140 Ohio St. 292. Malone, as a pourer of metal in a foundry, was subjected to a high degree of artificial heat. In the course of his employment, he suffered heat prostration from which death resulted. In affirming a judgment for the claimant, the court stated:

"1. The term 'injury' as used in the Constitution and in Section 1465-68, General Code (117 Ohio Laws, 109), as amended affective July 10, 1937, comprehends a physical or traumatic damage or harm, accidental in its character in the sense of being the result of a sudden mishap occurring by chance, unexpectedly and not in the usual course of events, at a particular time and place.

"2. When, in connection with an intentional act on the part of a workman which precedes an injury to him, something unforeseen, unexpected, and unusual occurs which produces the injury or from which the injury results, it is accidental in character and result.

"3. When an employee, by reason of the activities, conditions and requirements of his employment, is subjected to a greater hazard than are the members of the general public, and he is accidentally injured thereby, a casual connection between the employment and his injury is established.

"4. Heat exhaustion, suddenly and unexpectedly suffered by an employee as a result of the circumstances and requirements of his employment subjecting him to a greater hazard than that to which members of the general public are subjected, in this case by reason of working in a superheated foundry resulting in his death within twelve hours after the attack, constitutes an accidental traumatic injury under the Workmen's Compensation Act of this state."

In 1962, the Supreme Court decided *Hearing* v. *Wylie,* 173 Ohio St. 221, with two judges dissenting. There, the claim was based upon an injury allegedly sustained as a result of the lifting of a section of beef. The assertion was made that the sudden jerk of lifting the one hundred pound weight ruptured the appendix of claimant's decedent, from which death resulted. In reversing a judgment for the claimant and entering final judgment for the Administrator, the majority of the court declared that the rule in *Malone, supra,* had been embodied in R. C. 4123.01, and that the definition of "compensable injury" set forth in *Dripps* v. *Industrial Comm.,* 165 Ohio St. 407, particularly, had been changed. This latter conclusion was based on *DeLong* v. *Cooper Tire & Rubber Co.,* 14 Ohio App. 2d 44, the second paragraph of the syllabus of which reads as follows:

"The so-called 'Dripps Doctrine' established by *Dripps* v. *Industrial Commission* (1956), 165 Ohio St. 407, has been legislatively repealed by amendment to Section 4123.01 (C), Revised Code."

The Court of Appeals for Hancock County, in *De-Long, supra,* reversed a judgment entered upon a directed verdict, thus establishing as potentially compensable an injury allegedly sustained while picking up rubber stock from the floor by one whose job did not require him to lift objects of similar weight.

In 1967, the Court of Appeals for Montgomery County decided *Thomas* v. *Keller,* 9 Ohio App. 2d 237, paragraph two of the syllabus of which states:

"Where a workman, who had apparently recovered from previous arteriosclerotic heart disease, had just entered upon a new job feeding carton scraps into a bailer, and there is evidence that he was in his usual health, that he was working in an overheated, poorly ventilated room, that the job being done by him alone was ordinarily handled by two men, that he sweated and strained at his work, that he collapsed and died of myocardial infarction, and a medical expert testified that in his opinion the occurrence substantially hastened death; there is presented a jury

question of injury and death by means accidental in character and result received in the course of and arising out of such workman's employment as defined in Section 4123.-01 (C), Revised Code, and it is error to grant judgment for defendant notwithstanding a verdict for claimant.''

In 1969, this Court decided *Butts* v. *Keller*, 21 Ohio App. 2d 180 (the motion to certify was overruled by the Supreme Court, December 29, 1969). There, decedent was the paid secretary and manager of a lodge of a fraternal order who, for a number of years, had suffered heart trouble. During several weeks prior to his death, internal problems of the lodge became acute and he was attempting to arbitrate them. Meetings were heated and, ultimately, a national officer was summoned to assist in the resolution of the controversy. On the night he died, decedent mounted some forty-six steps to the meeting room, entered it, commenced to read the minutes, faltered, slumped over and died. The cause of death was ''coronary occlusion-sudden-generalized arterio sclerotic cardio vascular disease.''

In reversing an order granting the plaintiff a judgment *non obstante veredicto*, and in reinstating the jury verdict for defendant, we negated the conclusion of the trial court that the decedent had sustained an injury, within the meaning of R. C. 4123.01, which substantially accelerated his death.

Our examination of the authorities compels us to reiterate the principle set forth in the second paragraph of the opinion in *Lohnes* v. *Young*, 175 Ohio St. 291, and adopted by this court in *Hester* v. *Flowers*, 18 Ohio App. 2d 112, at page 115, as follows:

''It is well settled that the Workmen's Compensation Act does not create a general insurance fund for the compensation for injuries in general to employees but only for those injuries which occur in the course of and arise out of the employment.''

We conclude that the rationale of *Nelson* v. *Industrial Comm.*, 150 Ohio St. 1 is that which must be applied to the facts in the case at bar. We cannot phrase the precept better than did Judge Stewart at page 13 of his opinion:

"Although a liberal construction is justly required in the interpretation of the Workmen's Compensation Act, in order to have death compensation there still must be some evidence that the death of the workman was caused or contributed to by some act which was different in kind or in exertion from the regular, ordinary work performed by the workman and those engaged in like occupation."

Therefore, the Workmen's Compensation Law cannot be applied where death results from or is directly related to an adverse pre-existing physical condition, in the absence of an event or experience not regularly or ordinarily encountered in the course of employment and which produces the injury for which compensation is sought.

There is nothing in the record before us to demonstrate any unusual circumstance or occurrence producing the heart seizure leading to Ackerman's death. To the contrary, it is clear that he was engaging in a duty which was ordinary and regular, and shared alike by his fellow firefighters. Because the evidence is not sufficient to sustain a conclusion that there transpired anything unforeseen or unusual which provoked the fatal heart attack, there was no compensable injury, that is, no injury accidental in character and result, received in the course of, and arising out of, the decedent's employment. Therefore, death compensation cannot be awarded.

The judgment and order of the Court of Common Pleas is reversed and final judgment is rendered for the defendants.

*Judgment reversed.*

SHANNON, P. J., HILDEBRANT and HESS, JJ., concur.