MITLES, APPELLEE, v. YOUNG ET AL., APPELLANTS.

(No. 8803—Decided August 2, 1978.)

Mr. Timothy A. Shimko, for appellee.
Mr. Timothy J. Ochsenhirt, for appellants.

HUNSICKER, J. Paul Mitles filed a complaint in the Common Pleas Court alleging certain conduct on the part of Earl Young, Howard Baker and his former employer, Martin Oil Service, Inc. Later, Mitles filed an amended complaint with a jury demand, against the same defendants saying that Martin Oil Service, Inc., hereinafter called Martin Oil, owed him $440.67 in back wages. As a second claim for relief, Mitles said that Earl Young and Howard Baker, as agents of Martin Oil, falsely, publicly and maliciously accused him of having stolen money from Martin Oil. Mitles further alleged that Young and Baker summoned the police of Maple Heights, Ohio, in which city Mitles was working for Martin Oil, and ordered the police to arrest him. Mitles says he was arrested, taken to the police station, and securely confined for a period of nine hours before being released by the authorities. Mitles further, in a third claim for relief, asked for punitive damages because of the unlawful arrest.

Earl Young, Howard Baker, and Martin Oil each filed answers to the complaint admitting that Paul Mitles work-

ed for Martin Oil. Martin Oil further stated that Mitles, in his work for them, was obligated to account for $1,708.99 and deposit it to the credit of Martin Oil and that he did not so deposit these funds. Judgment is prayed for in the amount so withheld. This counterclaim of Martin Oil was denied by Mitles.

The basis of this lawsuit is simply the claim of Mitles that he was charged by authorized employees of Martin Oil with embezzling its money, and when he denied the accusation these employees called the police who, at the behest of the employees, arrested Mitles, took him to the police station, locked him in a cell for several hours, then released him. For this alleged arrest Mitles seeks damages.

The case was submitted to a jury that found $10,000 damages on the false arrest claim, $530.70 (later reduced to the amount claimed) on the wage claim and for Paul Mitles on the cross-complaint for failure to account for Martin Oil money.

Appellants, Earl Young, Howard Baker, and Martin Oil Service, Inc., say:

"1. The trial court's decision in overruling appellant's motion for directed verdict made at the end of appellee's case, and renewed at the conclusion of the entire case and in overruling appellant's motion for judgment notwithstanding the verdict was in error and contrary to law and against the weight of the evidence on the ground that the entirety of the proof submitted by the appellee in support of its action for false arrest was legally and factually insufficient in that there was no evidence whatsoever that an arrest occurred but rather that all actions of the plaintiff were completely voluntary and were not such as to subject the appellants to liability.

"2. The trial court erred in overruling appellant's motion for new trial on the ground that the decision and judgment in this case regarding the question as to whether or not a legally sufficient arrest occurred was against the weight of the evidence and contrary to law.

"3. The trial court's decision in overruling appellant's motion for directed verdict made at the end of appellee's

case, renewed at the conclusion of the entire case, and in overruling appellant's motion for judgment notwithstanding the verdict was in error, contrary to law and against the weight of the evidence on the ground that the entirety of the proof submitted by the appellee in support of its action for false arrest was legally and factually insufficient in that there was no evidence whatsoever that appellants knowingly made false statements as to a fact for the purpose of causing the police to act as they did since all evidence showed that the appellants acted completely within their legal rights.

"4. The trial court erred in overruling appellant's motion for new trial on the ground that the decision and judgment in this case regarding the question as to whether or not the appellant's knowingly made false statements of fact to the police was against the weight of the evidence and contrary to law."

Counsel for defendants filed a motion for a judgment notwithstanding the verdict of the jury, a new trial, and remittitur. Counsel for Mitles filed a motion to amend the pleadings to conform to the evidence, a contingent motion for a new trial, a motion for additur, and a motion to compel defendants to submit a bond as security.

The motion, as filed by counsel for Martin Oil, Young, and Baker, was overruled with the exception that the judgment for back wages was reduced to $440.67. The motion as filed by counsel for Mitles was overruled.

Counsel for Mitles, in the brief for the appellee, proposes a "Proposition of Law No. 3" as follows:

"Although the verdict of the trial court was just and fair and reasonable and rendered without any error prejudicial to the appellants, if the court of appeals reverses and grants a new trial, then the trial court should permit the issues of punitive damages and lost wages to be decided by the jury."

No cross appeal has been filed by counsel for Mitles and this court is without jurisdiction to consider the request made. On the motion of counsel for appellant, "Proposition of Law No. 3" is denied. A motion to dismiss this

claim of plaintiff was granted and a journal entry to that effect was filed by the court.

The transcript of testimony consisting of 425 pages has been read and studied with care. We find the jury justified in accepting the following statement of facts.

Paul Mitles began working for Martin Oil in July 1976; in October 1976, he was assigned as assistant manager, then manager, then back to assistant manager of Martin Oil station at Maple Heights, Ohio. He had charge of the paper work necessary to keep the station operational. Earl Young was the supervisor and manager of the station. Howard Baker was an auditor for Martin Oil.

Because of the illness of Mitles on or about January 1, a substitute operator was called to take over for a day or so. This substitute operator of the station reported that the paper work required to record the operation of the station was not in good shape. Earl Young called on the company auditor, Howard Baker, to come to the Maple Heights station. Young and Howard Baker met there on January 11, 1977. Mitles was doing the paper work to record the business of January 10. The January 9, 1977, paper work had been completed and the deposit form was ready to take to the bank. The money for the January 10 business was not at the station. It was on this discovery that things began to happen to Mitles.

Howard Baker reported to Earl Young that there was a large shortage of money, a sum of nearly $2,000. Mitles was called into the backroom and questioned by Baker and Young. Mitles repeatedly said he did not know where the money was. Baker and Young insisted that Mitles was responsible for the shortage. When Young could not get any answer from Mitles except that he did not have the money and did not know where it was, Young called the police. Two policemen came to the station in response to Young's call. It is admitted one, at least, if not both, was in uniform, and the one in uniform came into the room where Baker and Young were. Mitles was present at the time the officers came when Young said there was a shortage in the accounts, that Mittles was assistant manager, the only one responsible for the shortage. Mitles then left the room.

Young, Baker, and the police officer talked for a period in the room out of the presence of Mitles after which the uniformed officer came up to Mitles. The officer said he asked Mitles if he would go to the police station and Mitles said yes. Mitles said the officer came into the room after talking to Baker and Young and said, "Will you come with me, please." Whether this was a request or a command depends on the intonation of the officer's voice. It is certain that one accused of being responsible for a large money shortage by his employer would hardly be brave enough to resist such a display of authority. Mitles said he was nervous and went to the police headquarters. No one said, "We want you to tell us about the shortage," and Baker and Young never said to the police, "He is a good worker [as they testified he was], he will come over when you want the detectives to see him."

The police took Mitles to the jail and locked him in a cell, called a holding cell. They kept him there until the detectives could talk to him, which they did in the presence of Young and Baker, and finally released him about six hours after his incarceration. Baker and Young tried to get the city prosecutor to bring an action against Mitles, but the prosecutor would not.

The appellants say: "We did not arrest him; it was the police, our hands are clean; we only told the police that there was money missing at our station and Mitles was responsible for it."

Of course, we do not have all that was said by Baker and Young when they spoke to the policeman at the gas station, out of the presence of Mitles. We do know that circumstantial evidence is the handmaiden of truth. It certainly is a natural inference to conclude that Baker and Young said, in effect, to the policeman, "Take him down and maybe you can scare out of him a confession that he took the money." Why would a police officer take a person to jail and lock him up in a cell, just to talk to him or have others talk to him? Did Baker and Young believe he would escape? They knew he was married and buying a home; his wife and stepson also worked for the company.

Before Mitles was released, he volunteered to take a

polygraph examination, which he did by coming back to the Maple Heights police station the next day. This was not the act of a guilty person. The operator of the polygraph said it showed Mitles to be free of suspicion. Thus, the charges and arrest instigated by Baker and Young ended with serious results to Mitles, who is out of a job and ill because of the acts of the defendants.

The word arrest is not defined by statute. Webster's Third New International Dictionary defines arrest as follows: "to bring to a stop or halt the motion, course or progress of: * * * to check, hinder or slow down the course or progress: * * * the act of stopping or restraining * * *; the taking or detaining of a person on custody by authority of law * * *: legal restraint of a person * * *."

"Arrest" means to deprive a person of his liberty by legal authority, 5 Ohio Jurisprudence 2d 18, Arrest, Section 2; 5 American Jurisprudence 2d 698, Arrest, Section 3. Baker, Young, and Martin Oil seek to avoid any blame for the removal of Mitles from his place of employment and incarceration in a jail cell on the conduct of the police officer or on Mitles' voluntary act in accompanying the officer to the police station. Those who instigated the entire procedure were Baker and Young, the authorized agents of Martin Oil Services, Inc. Baker and Young knew much of the life history of Mitles. He was their employee and they should have known that he was not likely to leave town and that he had been a good, non-violent, obedient employee. In the face of this knowledge, Baker and Young, as agents of Martin Oil, called the police to then point the finger of crime at Mitles. There was no evidence of a breaking and entering of the gas station, no evidence the safe was broken into or that it had been tampered with. There was no evidence of an armed robbery or other offense committed at the gas station that required a police investigation of Mitles at a police station.

An arrest occurs at the point where a suspect's freedom of movement is curtailed. *Henry v. United States* (1959), 361 U. S. 98. On the basis of the evidence, the trial court was correct (1) in not directing a verdict for appel-

lant and (2) in not granting the motion notwithstanding the verdict. *Thomas* v. *Keller* (1967), 9 Ohio App. 2d 237.

We reject assignment of error one.

Counsel for appellant cites *Mullins* v. *Rinks, Inc.* (1971), 27 Ohio App. 2d 45, and *Toledo* v. *Lowenberg* (1955), 99 Ohio App. 165. Cases must be read in light of the facts. There is no similarity between the above cases and the instant case. Here two police officers on duty came in a police car, one officer it is admitted was in uniform, and it is a proper inference to conclude they were both in uniform and armed. Mitles had no reason to believe his acts were to be construed as voluntary when the officers even denied him the right to light a cigarette.

We reject assignment of error two.

As we pointed out above, it was after the police officer talked in private with Baker and Young that he went to Mitles and said, "Come with me." Whether please was or was not added to that statement is of no importance. The only logical and rational conclusion that can be drawn is that Baker and Young said Mitles was the one who took the money. If Mitles was free to leave, why lock him incommunicado in a cell in the jail? If Mitles was free to leave, why was he held for six hours? Mitles said he would come back the next day to take a polygraph test and he did. Is that the conduct of a criminal who should be locked up only to ask him a few questions, all of which he had answered to Baker and Young before they called the police?

We reject assignment of error three.

In *Brinkman* v. *Drolesbaugh* (1918), 97 Ohio St. 171, the court said:

"1. False imprisonment is a legal term defining a legal status known in law as an unlawful detention or illegal deprivation of one's liberty.

"2. False imprisonment *per se* is not concerned with good or bad faith, malicious motive or want of probable cause on the part of the prosecuting witness, or the officer causing the imprisonment. If the imprisonment was *lawful*, it is not the less lawful that any or all of the foregoing elements existed. These elements relate to an action of

malicious prosecution, but are not essential to an action in false imprisonment." (Syllabus.)

The rule announced in *Brinkman, supra,* applies as well to the case before us. It matters not whether Baker and Young did or did not make false statements of fact to the police. True or false, they instigated the arrest of Mitles and so are responsible for the consequences.

We reject assignment of error four.

After a careful reading of the transcript of proceedings and an examination of the assignments of error, we find none of the claimed errors prejudicial to the substantial rights of the appellants.

The judgment is affirmed.

*Judgment affirmed.*

MAHONEY, P. J., and BELL, J., concur.

HUNSICKER, J., retired, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.