OPINION
This appeal emanates from the Trumbull County Court of Common Pleas. Appellant appeals the trial court's judgment entry granting the motion for directed verdict of appellees, Higbee Department Stores, Inc. d.b.a. Dillard's Department Store ("Dillard's") and Kim Beidler ("Beidler"). The appeal also includes the granting of summary judgment on appellant's claims for assault and battery and invasion of privacy.
The record reveals that on July 12, 1997, appellant filed a complaint against appellees alleging defamation, invasion of privacy, breach of contract, assault and battery, and negligent hiring.[1] Thereafter, on June 17, 1998, appellees filed a motion for summary judgment, and appellant submitted a memorandum in opposition. On August 19, 1998, appellant voluntarily dismissed his causes of action for breach of contract and negligent hiring.
On October 9, 1998, the trial court granted appellees' motion for summary judgment in part and denied it in part. The trial court granted appellees' motion as to the allegations of invasion of privacy and assault and battery, but denied it as to the claims of defamation and false imprisonment. On June 28, 1999, a jury trial was conducted on those allegations.
At the trial, appellant testified that he was employed as a dock manager by Dillard's at its Eastwood Mall location in Niles, Ohio. He was hired by Beidler, the store manager, and began his employment around September 17, 1996. On December 13, 1996, his employment with Dillard's was terminated.
Appellant recalled that on December 13, 1996, he arrived at work between 5:00 a.m. and 5:30 a.m. He testified that it was very busy at the store on that morning. The store scanners were not operating correctly, so he tried to get them in working order. While he was in the process of rebooting the scanning system, he received a page that a store employee was attempting to enter the store through the dock door. Since, he had the store keys, he requested that "somebody * * * get [his] keys so that they can let [the employee into the store]." Even though he knew that giving out his keys was against company policy, he had done it in the past with Beidler's knowledge, so he figured it would be permissible for him to give someone his keys to open the door. The woman to whom he gave his keys promptly returned them to him.
Once the scanning system was operational, appellant became aware that a couple of city of Niles Police Officers were in the store. He was near the cosmetic counter of the store when he saw the police officers escorting an employee to the office area. Subsequently, according to appellant, the assistant store manager, Mary Beth Fincher ("Fincher") began "yelling at [appellant] to come clean * * * and [he] started screaming back at her."[2] The police then escorted appellant to an office located in the back of the store. Appellant stated that the office was "roughly the same size as the other Dillard's offices." However, he testified that he was alone in the room for two to three hours and that he was not allowed to leave the room during that time. While he was in that office, he wrote out his statement. Later, a Dillard's manager terminated three employees under appellant's supervision for dishonesty and theft.
According to appellant, at one point while he was in the office, he requested use of the telephone and was told, by a Niles police officer, to "sit back down." Appellant then overheard the officer ask Beidler if he could use the phone, but Beidler said he could not. He also stated that he was permitted to use the restroom with a police escort. A bit later, appellant was taken to Beidler's office, and his employment was terminated for neglecting his duties.
Appellant also related that prior to December 13, 1996, Beidler had assaulted him on a couple of occasions. He recalled that one time Beidler "shoved [him] with her hand, and [he] took a couple steps backwards * * *." Beidler apologized and stated that it would never happen again. However, appellant indicated that about one week later, while he was training an employee, Beidler approached him and "grabbed [his] arm and kind of spun [him] around." Appellant wrote a letter to the vice president of Dillard's complaining about these two incidents.
Appellant explained that the events, which unfolded on December 13, 1996, affected his lifestyle. However, on cross-examination, he revealed that he found another job a month and a half later. Further, he stated that he did not consult a psychologist or counselor, nor did he take any medication as a result of the incident. At the close of the evidence presented by appellant, appellees moved for a directed verdict, which the trial court granted with regard to the defamation claim, but denied as to the false imprisonment assertion.
As part of appellees' case-in-chief, Beidler took the stand. Her testimony included a description of appellant's job duties. Appellant was in charge of supervising ten to twelve employees and guarding the dock. She instructed appellant that the dock doors were to be secure at all times and that generally employees were not permitted to leave the premises during working hours without the permission of a supervisor. Beidler, appellant, the operations manager, and the sales manager were the only individuals with keys to the store. On December 13, 1996, Beidler recalled that she witnessed three different employees under appellant's supervision going to their cars during working hours. She observed two of these employees leaving the store with Dillard's merchandise. She proceeded to call the Niles Police Department, and the two men were arrested. Beidler then instructed all other store employees to remain in the building.
Beidler testified that she terminated the employment of the three employees whom she saw leaving the building. She proceeded to terminate appellant from his employment for "severe negligence in his duties as dock manager" after appellant admitted turning his keys over to another employee. Moreover, he had "let employees come and go to their cars in the morning, * * * and he also admitted that he didn't feel he had control of his employees." She stated that she never suspected appellant of theft.
Beidler recalled that while she was firing the employees who stole from Dillard's, she asked Fincher to tell appellant to wait in an office. Beidler described the size of the office and explained that it could not be locked from the outside. She also testified that she did not threaten to use force against appellant. Further, appellant was not arrested or threatened with an arrest.[3] Beidler did not say that appellant could not use the telephone, nor did she instruct anyone else to tell him that. In fact, she stated that she told him that "he could use it if he needed to."
Beidler indicated that she never told appellant or authorized anyone to instruct him that he could not use the bathroom. Yet, while she was in another office, someone asked her if appellant could use the restroom, and she said, "of course." She also did not tell anyone to escort him. Beidler explained that the reason she wanted appellant to remain in the office was so that she could talk to him about the events that transpired that day. She did not want him to return to his normal duties because she wanted to get his version of what had occurred before other employees began asking him questions.
The city of Niles police officers testified that they did not stand outside the room appellant was in to guard him. However, they were in the proximity of the room because of the other employees that had been arrested. The officers could not recall whether appellant asked to use the restroom or telephone. Further, one of the officers recalled that he was in "[p]lain street clothes" that day and that he was not guarding the door of the office appellant was waiting in because he was "busy doing evidence." That officer also explained that he was not aware of any police officers guarding the door of the office. However, he stated that there were other uniformed officers in the vicinity of the office, but he was unaware of the identities of the individuals who escorted appellant to the bathroom.
At the end of the evidence, appellees renewed their motion for a directed verdict. The trial court granted the motion on appellant's false imprisonment claim and entered judgment in favor of appellees as to that remaining issue. Appellant timely filed the instant appeal and now asserts the following as error:
 "[1.] The trial court erred in granting a directed verdict in favor of [appellees] on [appellant's] claim of false imprisonment.
 "[2.] The trial court erred in granting summary judgment in favor of [appellees] on [appellant's] claims of assault and battery.
 "[3.] The trial court erred in granting summary judgment in favor of [appellees] on [appellant's] claim of invasion of privacy."
In his first assignment of error, appellant argues that the trial court erred in granting appellees a directed verdict on his false imprisonment claim.
When a party makes a motion for directed verdict pursuant to Civ.R. 50(A)(4), a judge must construe the evidence most strongly in favor of the party against whom the motion is made. A motion for a directed verdict tests the legal sufficiency of the evidence to support a primafacie claim, and thus, presents a question of law. Grau v. Kleinschmidt
(1987), 31 Ohio St.3d 84, 90; Dimora v. Cleveland Clinic Found. (1996),114 Ohio App.3d 711, 716. A judge may not weigh the evidence nor test the credibility of the witnesses, but must give to the party opposing the motion the benefit of all reasonable inferences from the evidence.Zavasnik v. Lyons Transp. Lines, Inc. (1996), 115 Ohio App.3d 374, 378. A judge shall direct a verdict in favor of the moving party only after he has found "that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted [by the nonmoving party] and that conclusion is adverse to the [nonmoving party.]" Civ.R. 50(A)(4). Where there is substantial, competent evidence favoring the nonmoving party, so that reasonable minds might reach different conclusions, the motion must be denied. Ramage v. Cent. Ohio EmergencyServ., Inc. (1992), 64 Ohio St.3d 97, 109.
False imprisonment involves the unlawful restraint by one person of the physical liberty of another. Rogers v. Barbera (1960), 170 Ohio St. 241,243. The essence of the tort is depriving someone of his or her liberty without lawful justification. Mullins v. Rinks, Inc. (1971),27 Ohio App.2d 45, 48. To establish a prima facie case of intentional false imprisonment, appellant must demonstrate that he was intentionally confined within a restricted area, both without lawful privilege and without his consent. Feliciano v. Kreiger (1977), 50 Ohio St.2d 69, 71.
In the instant matter, appellant has failed to demonstrate that he was confined to a restricted area. Although appellant stated that the space was limited, during the trial, appellant testified that the office he was waiting in was "roughly the same size as the other Dillard's offices."
We conclude that appellant did not present substantial, competent evidence to show that he was intentionally confined without lawful privilege and without his consent. In Lester v. Albers Super Markets,Inc. (1952), 94 Ohio App. 313, 317, the court noted that "false imprisonment may not be predicated on a person's unfounded belief that he was restrained." Additionally, "* * * submission to the mere verbal direction of another unaccompanied by force or threats of any character cannot constitute a false imprisonment." Id.
Here, appellant believed he was restrained. He was asked to wait in an office so Beidler could interview him, and appellant complied with the request. Beidler explained that she wanted appellant to wait in the office so she could get his version of the events that transpired on the morning of December 13, 1996. She did not want him talking with other employees until she got his account. Appellant also claims that he was not allowed to use the telephone and was escorted to the bathroom by police officers, but admits that no force was ever used against him. Appellant does not allege that he was not allowed to leave the office. However, Beidler testified that she did not require any police officers to stand outside of the office where appellant was waiting, nor did she instruct anyone to accompany appellant to the restroom. Any accompaniment to the restroom was not under the direction, either expressly or impliedly, of Beidler. Furthermore, we note that appellant brought suit against Beidler and Dillards, not against the Niles Police Department. Hence, appellant has not presented substantial, competent evidence to show that reasonable minds might reach different conclusions regarding whether appellees committed the tort of false imprisonment. Accordingly, there was no error in directing a verdict in favor of appellees on the tort claim. Appellant's first assignment of error lacks merit.
As appellant's second and third assignments of error are interrelated, they will be addressed in a consolidated fashion. Appellant argues that the trial court erred in granting appellees' motion for summary judgment on appellant's claims for assault and battery and invasion of privacy.
In order for a summary judgment to be granted, the moving party must prove:
 "* * * (1) [N]o genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383, 385.
The Supreme Court stated in Dresher v. Burt (1996), 75 Ohio St.3d 280,296, that:
 "* * * [T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.)
If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ.R. 56(E) to provide evidence demonstrating a genuine issue of material fact. Id. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate courts review a trial court's granting of summary judgment denovo. Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704,711. The Brown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735,741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
In the case at bar, appellant asserts that the trial court erred in granting appellees' motion for summary judgment as to the assault and battery claim.
The tort of assault was defined in Smith v. John Deere Co. (1993),83 Ohio App.3d 398, 406, as:
 "* * * the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact. The threat or attempt must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching. An essential element of the tort of assault is that the actor knew with substantial certainty that his or her act would bring about harmful or offensive contact."
A person is subject to liability for battery when he or she acts in a manner intending to cause a harmful or offensive contact and when a harmful contact results. Love v. Port Clinton (1988), 37 Ohio St.3d 98,99. Contact that is offensive to a reasonable sense of personal dignity is offensive contact. Id. "No matter how trivial the incident, a battery is actionable, even if damages are only one dollar." Leichtman v. WLWJacor Communcations, Inc. (1994), 92 Ohio App.3d 232, 235, citing Laceyv. Laird (1956), 166 Ohio St. 12, paragraph two of the syllabus.
It is not clear if Beidler knew with substantial certainty that the actions she took on the two occasions prior to December 13, 1996, would bring about harmful or offensive contact. However, the record reveals that appellant was not placed in fear of such contact, he did not endure any physical harm, nor did the incidents impact his lifestyle. According to appellant's own testimony, Beidler's actions were not offensive to appellant's reasonable sense of personal dignity. As a result, the trial court did not err in granting appellees' motion for summary judgment as to the assault and battery claim.
In addition, appellant alleges that the trial court erred in granting appellees' motion for summary judgment as to the invasion of privacy claim. Specifically, appellant stated that he was followed into the restroom by police officers and as a result, he suffered from shame and humiliation.
The court in Rogers v. Buckel (1992), 83 Ohio App.3d 653, 658, enumerated the elements of an actionable invasion of privacy as follows:
 "`The right of privacy is the right of a person to be let alone, to be free from unwarranted publicity, and to live without unwarranted interference by the public in matters with which the public is not necessarily concerned. * * *
 "`An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.' * * *" (Emphasis sic.)
 Therefore, in order to assert a tortious invasion of privacy claim, appellant must demonstrate that the area intruded upon was private, and that the intrusion of appellees was unwarranted and offensive or objectionable to the reasonable man. Contadino v. Tilow (1990), 68 Ohio App.3d 463, 470.
A review of the transcript does not show that appellant was outraged or endured mental suffering, shame, or humiliation from being escorted to the bathroom. In fact, the evidence revealed that appellant did not consult a psychologist or counselor, nor did he take any medication as a result of the incident. Furthermore, Beidler testified that she did not tell anyone to escort appellant to the bathroom. Therefore, appellant has not demonstrated the requirements of the tort of invasion of privacy. Appellant's second and third assignments of error are without merit.
For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Trumbull County Court of Common Pleas is affirmed.
 _____________________ FORD, P.J.
NADER, J., dissents with Dissenting Opinion,
DONOFRIO, J., Ret., Seventh Appellate District, sitting by assignment, concurs.
[1] Appellant filed an amended complaint on October 17, 1997, which added a claim of false imprisonment against appellees.
[2] During Fincher's testimony, she stated that she never told appellant to come clean.
[3] Appellees other witnesses corroborated Beidler's version of the events.