**LESTER, Plaintiff-Appellee, v. ALBERS SUPER MARKETS, INC., Defendant-Appellant.**

Ohio Appeals, First District, Hamilton County.

No. 7638.   Decided November 17, 1952.

Paul A. Holdt, Harvey A. Schultz, Cincinnati, for plaintiff-appellee.

Harmon, Colston, Goldsmith & Hoadly, Henry B. Street, Douglas G. Cole, Cincinnati, for defendant-appellant.

## OPINION

By MATTHEWS, J.:

In her amended petition, the plaintiff alleged two causes of action—one, for false imprisonment, and the other for slander. In submitting the case to the jury, the court withdrew the cause for slander from the consideration of the jury on the ground that there was no evidence of all the essential elements of that cause of action. The issues raised by the pleadings as to the cause of action for false imprisonment were submitted to the jury resulting in a verdict for the plaintiff for $800.00, upon which judgment was rendered. It is from that judgment that this appeal was taken.

The defendant-appellant assigns as errors the giving of certain special charges requested by the plaintiff and the refusal to give a charge requested by it, error in the general charge, error in sustaining the motion of the plaintiff to strike certain allegations alleged as an affirmative defense, and error in overruling its motions for an instructed verdict, and for judgment.

In view of the conclusion we have reached that the court erred in overruling the defendant's motions for an instructed verdict and for judgment, we find it unnecessary to pass upon the other assignment. In reaching our conclusion, we have confined ourselves to an analysis of the plaintiff's testimony alone.

The incident which the plaintiff characterizes as a false imprisonment took place in the defendant's store called a "Super Market" of which she had been a patron for several years, visiting it to make purchases as frequently as twice a week. She was thoroughly familiar with the premises and

the system of operation of the store. She saw the signs that were posted to indicate the entrance and exit. She knew that the merchandise was toward the rear of the store and that customers served themselves and after obtaining what they wanted, they carried or hauled their purchases by means of carts toward the front passing through aisles or lanes where their purchases were checked by an attendant and paid for and in the process all bags carried by the customer were inspected and their contents checked. There was a notice posted that all bags and packages would be checked and the plaintiff was aware of the notice and the practice.

It is clear that she had on many prior occasions gone through the process and would have done so without protest on the occasion in question had she not been in a hurry as will appear later.

On this occasion the plaintiff had gone to another store where she had bought some rolls which she had in a small bag within a paper marketing bag of the usual kind with handles for convenience in carrying. When she left the other store she took a bus or street car and obtained a transfer with which she intended to board another bus or car in front of defendant's store. While waiting for the other bus or car she noticed a can of "cocktail fruit" in the window of defendant's store and concluded to buy a can and entered the store for that purpose. She obtained the can and then "started to the line, through the line,—to cash it out, to pay for it. Well, the line —I was watching for my street car outside, I can see it coming from the window. Finally I was in two lines. The first line was too long, then I stepped over to the next line, then finding I could not get waited on, I sat the can of cocktail fruit on the table and turned to go out, turned from the checking line which was there just a few feet from the checking line and then I—then the manager he came to me."

She was asked to tell what happened after she left the second check-out line, to which she responded: "Right there from the check-out line I saw I didn't have time to go back there and put the fruit, the can where I had gotten it so then I sat it on the bread stand and turned to go out. I got in the middle of the floor, not very far from the checking line when the manager said to me 'That bag will have to be searched' I told him, I smiled, I said to him 'I haven't bought anything in the store today. There is your goods on the counter.' He stopped and he looked. He says 'Lady that bag will have to be searched' with a nasty rough voice.—Then he says to me again—I said; 'Well, I haven't time to have my bag searched.' I told him I was on the transfer, my car was out

there. He said: 'Lady, that bag will have to be searched.' With that I said: 'I haven't time to have my bag searched, my car was out there.' He said to me this last time, he said 'Lady, the bag will have to be searched.'

"Well, I didn't know what to do. He was still standing there. He is right in front of me all the time, right in front of me. I couldn't get around. He said: 'Lady, that bag will have to be searched.' I said: 'Well, all right, go ahead and search it.' "

Thereupon, the bag was searched, the contents removed, nothing was found that belonged to the defendant, the contents were returned to the bag and she was told: "Everything is all right now. You may go." And she then passed through the checking line and left the store.

The plaintiff also testified that there were many customers in the store at the time and that the incident attracted the attention of several, to her embarrassment.

The plaintiff was asked whether anyone placed a hand upon her and she said no one touched her. She said that she was in the store about 15 minutes. Other witnesses called by her said the incident did not last more than five minutes. She also said there were other exits and neither she nor any other witness testified that the defendant ordered her to stay or refused to allow her to leave.

The authority of a private citizen to make an arrest was discussed at the bar. That subject is irrelevant to this inquiry. Nothing was said or done indicating that the defendant was assuming to exercise any such authority. It thought its private right of property was being violated, which it was resisting. It was not assuming to vindicate any public right. The plaintiff was not accused of any crime. Nothing was done to indicate that she was being taken into custody, or that she was being held for delivery to a peace officer to answer a criminal charge. Under such circumstances there is no basis for the suggestion that this is a false imprisonment, initiated by a false arrest. In 3 O. Jur., 128, it is said: "Nor is there any arrest where a person is forcibly seized without pretense of taking him into legal custody." Much less is there basis for a charge of arrest where no force of any sort is used. In 4 Corpus Juris Secundum, 571, it is said: "To constitute an arrest there must be an intent to arrest under a real or pretended authority, accompanied by a seizure or detention of the person which is so understood by the person arrested."

As we view the record, it raises the fundamental question of what is imprisonment. Before any need for a determination of illegality arises there must be proof of imprisonment. In 35 Corpus Juris Secundum, 512, 513, it is said: "Submis-

sion to the mere verbal direction of another, unaccompanied by force or the threats of any character, cannot constitute a false imprisonment, and there is no false imprisonment where an employer interviewing an employee declines to terminate an interview if no force or threat of force is used and false imprisonment cannot be predicated on a person's unfounded belief that he was restrained."

Many cases are cited in support of the text. We indicate the facts of a few. In Sweeny v. Woolworth Co., 247 Mass. 277, 142 N. E. 50, 31 A. L. R. 311, the manager of a store accused a boy of larceny, and on the manager's demand the boy turned his pockets inside out under a threat that if he did not do so an officer would be called to arrest him. Notwithstanding the boy's testimony that the manager would not let him leave the store which the court said was a mere conclusion of fact without evidence of any action of the manager upon which to base it, the court held that the trial court should have sustained the defendant's motion for an instructed verdict, saying: "There were no words or conduct which could have induced a reasonable apprehension by the plaintiff, notwithstanding his tender years, that he could not leave the defendant's premises without interference if and when he desired to do so."

In Great Atlantic & Pacific Tea Company v. Billups, 253 Ky., 126, 69 S. W. (2d.) 5, a customer was falsely charged with not paying for a bar of candy after she had left the store and was proceeding along the street. Except for the place it occurred and the fact that the customer paid again rather than go back to the store to continue the inquiry, the facts are very similar to the facts in the case at bar. Speaking of the conduct of the manager, the court at page 7 of the Southwestern Reporter said: "There is nothing in his conduct or words indicating an intention on his part to take Mrs. Billups into his custody, or to subject her to his control, or reasonably calculated to lead Mrs. Billups to believe that she was deprived of her liberty or placed under restraint." The court held that the jury should have been instructed to return a verdict for defendant.

See: Weller v. Hersfeld, 189 Wis., 554, 208 N. W. 599.

In Fenn v. Kroger Grocery & Baking Co., 209 S. W. 885 (Mo.) the court said:

"A case was not made out for false arrest. The plaintiff said she was intercepted as she started to leave the store; that Mr. Krause stood where she could not pass him in going out. She does not say that he made any attempt to intercept her. She says he escorted her back to the desk, that he

asked her to let him see the change . . . She does not say that she went unwillingly . . . Evidence is wholly lacking to show that she was detained by force or threats. It was probably a disagreeable experience, a humiliating one to her, but she came out victorious and was allowed to go when she desired with the assurance of Mr. Krause that it was all right. The demurrer to the evidence on both counts was properly sustained."

The result of the cases is epitomized in 22 Am. Jur., 368, as follows:

"A customer or patron who apparently has not paid for what he has received may be detained for a reasonable time to investigate the circumstances, but upon payment of the demand, he has the unqualified right to leave the premises without restraint, so far as the proprietor is concerned, and it is false imprisonment for a private individual to detain one for an unreasonable time, or under unreasonable circumstances, for the purpose of investigating a dispute over the payment of a bill alleged to be owed by the person detained for cash services."

The defendant's answer included a general denial and also what is described as a second defense which was that if plaintiff had been detained that such detention did not exceed five minutes and was no longer than a reasonable time within which to investigate the plaintiff's conduct. The court, on plaintiff's motion, struck these allegations from the answer. We are of the opinion that the court did not err in so doing, for the reason, that if time became material it was a part of the plaintiff's case, upon which she had the burden of proving that the time consumed was unreasonable. No burden rested upon the defendant.

Appellant's counsel urges error in that the court failed to qualify the restraint that would constitute false imprisonment by the adjective "unlawful" or "illegal." The court used the qualifying phrase "against her will" and it is asserted that any restraint of one private person by another is unlawful or illegal, and, therefore, the expressions have the same meaning. We are not prepared to concur with appellee in this position, but in view of our conclusion that in no true legal sense could the plaintiff be said to have been either unlawfully restrained or restrained against her will, it becomes unnecessary to decide the point.

For these reasons, the judgment is reversed and final judgment entered for the defendant-appellant.

HILDEBRANT, PJ, MATTHEWS, J, concur.