WALDEN, APPELLANT, *v.* GENERAL MILLS RESTAURANT GROUP, INC. ET AL., APPELLEES.

(No. C-850298 — Decided
March 12, 1986.)

*Lindhorst & Dreidame* and *Jay R.
Langenbahn,* for appellant.

*Frost & Jacobs, Donald McG. Rose*
and *Mark H. Klusmeier,* for appellees
General Mills Restaurant Group, Inc. et
al.

*Earl, Warburton & Adams* and *Robert L. Washburn,* for appellee John G.
Carroll.

*Per Curiam.* This cause came on to
be heard upon an appeal from the Court
of Common Pleas of Hamilton County.

Appellant, Lynn Walden, became
employed by appellee General Mills
Restaurant Group, Inc.[1] in September
1977. Appellant underwent fifteen
weeks of training which included work
at several restaurants in or around the
Greater Cincinnati area. In April 1979,
appellant was assigned to the Red Lobster restaurant on Reading Road as an
associate manager.

In June 1980 and again in September 1980, shortages in the Reading Road
restaurant money receipts were discovered, totalling approximately $5,000.
The September shortage consisted of an
entire day's bank deposit.

The record further discloses that
Red Lobster initiated an investigation
concerning the missing receipts in September 1980. The investigation included
requiring certain of its employees to submit to a polygraph examination.

On September 18, 1980, Red Lobster's regional manager, appellee Robert Gallentine, approached appellant
while she was on duty at the restaurant
and advised her that she must either
submit to a polygraph examination or
face termination from her employment.
Appellant requested time to reflect upon
her situation. Appellant was informed
that the test would be administered that
evening and she was afforded the opportunity to leave during her shift of duty to
consult an attorney.

Appellant returned to complete her
shift at 6:30 p.m. and she worked until
9:00 p.m.

The polygraph examinations were
being conducted at a hotel in the vicinity
of the restaurant. Upon leaving work,
appellant made her way to that site and
arrived at approximately 9:20 p.m.
Upon her arrival, she encountered several other Red Lobster employees in the
hotel's lobby awaiting their turn to
undergo the polygraph. Thereafter, appellant was escorted by appellees Robert
Gallentine, David Longest and Harry
Gauntlett, Jr. to the hotel room in which
the tests were being administered. The
polygraphist was appellee John G. Carroll.

Prior to entering the examination
room, appellant tendered a letter to Red
Lobster's representatives which read:
"To: Bob Gallentine
    Red Lobster Inns of America
    "I would like to ask as to why I am
being asked to submit myself to a polygraph examination, when the records
clearly indicate that I was not on duty at

---

[1] General Mills Restaurant Group, Inc. is
a Florida corporation doing business in the
state of Ohio as Red Lobster Inns of America
("Red Lobster"). The remaining appellees
are employees or persons hired by Red
Lobster to aid in an investigation which is the
subject matter of the cause *sub judice.*

the time the transactions in question were made.

"I do not understand company policy on polygraph examinations. Would you please define it for me in writing. Would you please state in writing why I am being asked to submit to the polygraph examination.

"I therefore decline to take a polygraph examination at this time or until these policies and questions have been answered to my satisfaction."

Appellant testified during her deposition that Gallentine, Longest and Gauntlett persuaded her to discuss the polygraph examination with Carroll, hoping that she would submit to the examination. Thereafter, appellant and Carroll stepped from the examination room into the hallway, whereupon Carroll attempted to reassure appellant that she had nothing to fear. Appellant agreed to reenter the room but she did not agree to submit to the test. When Carroll and the appellant returned to the examination room, the Red Lobster representatives departed. Carroll produced a release form, the first sentence of which provides:

"I, [appellant's signature], voluntarily — without threats, duress, coercion, force, promises of immunity or reward — agree and stipulate to be interviewed and/or take a polygraph (truth-verification) examination for the mutual benefit of myself, John G. Carroll, Polygraphist, and Red Lobster Inns of America, Inc."

The release is in two sections. Appellant executed the first portion at 11:34 p.m. The second portion of the release reads as follows:

"This interview/examination was concluded at 1:13 on the above date. I completely re-affirm in its entirety my above agreement. In addition, I knowingly and intelligently continued [sic] to waive all my rights, including those listed in a [sic] second paragraph above, and I willingly made all the statements that I did make.[2]

"I also certify that during the entire time I was here I have been well-treated, submitted myself freely to the interview/examination knowing that I could stop any time I so desired by merely saying I wish to stop or that I wish to consult an attorney or any other person. I remained of my own free will knowing that I could leave this room at any time I so desired, and that there were no threats, promises, or any harm whatsoever done to me during the entire period I have been here, either in connection with the interview/examination or my again signing this agreement, stipulation, and release form."

The above passage is followed by what purports to be the appellant's signature.

Appellant acknowledged during the deposition that Carroll did not physically prevent her from leaving the room. Appellant further acknowledged that upon reentering the room, Carroll replied to the questions appellant raised in her letter. Carroll also informed appellant that he would not attach the polygraph machine to her person unless and until she executed the release form. Thereafter, Carroll disclosed to appellant the questions he would ask of her during the polygraph test. At appellant's request Carroll rephrased one of the questions.

Carroll then performed a pre-test procedure during which parts of the machine were physically placed in contact with the appellant's person, in order for Carroll to demonstrate to the appellant how the machine functioned. After that procedure was accomplished, appellant indicated that she did not wish to proceed further with the test, at

---

[2] The rights enunciated in the final paragraph of the release are basically a reiteration of the rights contained in the second paragraph.

which time Carroll immediately removed the attachments. Appellant stated that she could not recall whether Carroll touched her other than to apply and remove the testing equipment. Appellant agreed that the polygraph equipment was placed on the outside of her clothing and that Carroll did not touch her inappropriately. She further acknowledged that she agreed to proceed with the pre-test procedure.

After appellant terminated the interview, Carroll walked appellant to her automobile, to which she did not object: "I was glad he was walking me to the car because I didn't want anyone else to see me." Appellant explained that she did not desire further contact with the Red Lobster employees who previously had been present because, in her opinion, they had insisted that she submit to the examination or be terminated. Appellant was in fact terminated by Red Lobster shortly thereafter.

On September 11, 1981, appellant filed a complaint in the court below in which she alleged wrongful termination from Red Lobster employment, false imprisonment, assault and battery, defamation and intentional infliction of emotional distress. Following the timely filing of answers to the complaint and extensive discovery, the appellees filed their respective motions for summary judgment. The trial court granted the motions for summary judgment as to all of appellant's claims, except for her claim of intentional infliction of emotional distress. From the judgment of the court below, appellant brings this timely appeal in which she asserts in a solitary assignment of error that the trial court erred in granting, in part, appellees' motions for summary judgment.[3] For the reasons that follow

we find the assignment of error to be without merit.

It is fundamental that before summary judgment may be granted, the court must determine that: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the party against whom the motion is made, that conclusion is adverse to such party. *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

Appellant first argues that her claim for wrongful discharge from employment is viable because her termination solely for refusing to submit to the polygraph examination is contrary to public policy. We perceive from the appellant's discussion concerning this claim that she concedes that her status with Red Lobster was that of an at-will employee.

The Ohio Supreme Court recently reaffirmed the employment-at-will doctrine in *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 19 OBR 261, 483 N.E. 2d 150, the first paragraph of the syllabus of which holds: "Unless otherwise agreed, either party to an oral employment-at-will employment agreement may terminate the employment relationship for any reason which is not contrary to law." From that premise we begin our analysis of appellant's assertions.

Appellant cites *Phung* v. *Waste Management, Inc.* (October 19, 1984), Sandusky App. No. S-84-4, unreported,[4] as an exception to the employment-at-will doctrine. In *Phung,* the court held

---

[3] Appellant's defamation claim was neither briefed nor argued.

[4] Reporter's Note: On April 16, 1986,

*e.g.,* subsequent to the rendering of the opinion *sub judice, Phung* was reversed in 23 Ohio St. 3d 100, 23 OBR 260, 491 N.E. 2d 1114.

that an employee had a cause of action in tort for wrongful discharge for reporting to his employer that the employer was conducting its business in violation of law. The employer, rather than correcting the problem, discharged the complaining employee.

We are of the opinion that *Phung* is distinguishable from the case *sub judice.* Here, Red Lobster detected that approximately $5,000 of its sales receipts had been diverted from daily bank deposits by an unknown employee.[5] Red Lobster, through its agents, had the right to attempt to determine the identity of the wrongdoer. We conclude that appellant was merely faced with a choice, albeit an unpleasant one: she could assist Red Lobster's investigation by submitting to the polygraph examination, or face termination. The record, through the appellant's own testimony, clearly shows that she was not forced to undergo the examination. However, the failure to do so subjected her to discharge.

Accordingly, we hold that the trial court did not err in granting the appellees' motions for summary judgment as to the appellant's claim of wrongful discharge. Appellant's employment by Red Lobster was terminable at will by either party. See *Evely* v. *Carlon Co.* (1983), 4 Ohio St. 3d 163, 4 OBR 404, 447 N.E. 2d 1290; *Mers* v. *Dispatch Printing Co., supra.*

Appellant next alleges that the coercive behavior of the appellees toward her for three hours in the hotel room constituted false imprisonment. She further argues that the alleged coercive behavior and offensive touching of her person constituted assault and battery. We have carefully reviewed the record

and we conclude that the appellant's contentions are not substantiated.

The testimony of appellant in her deposition, as set forth above, reveals that she was at all times free to leave the site of the polygraph examination. No doubt appellant was faced with an unpleasant alternative, either submit to the examination or be terminated. However, we conclude that she voluntarily appeared at the test site. The record further supports a finding that the appellant was responsible for the three-hour duration of the interview. Appellant arrived late for the examination.[6] Further delay was caused when appellees responded to appellant's questions concerning Red Lobster's policy on polygraph examinations and why she was being asked to submit to the test. Appellant indicated that she would not submit to the examination until such policy and questions had been answered to her satisfaction.

Nor does the record sustain appellant's claim for assault and battery. We do not find any evidence of an inappropriate touching of appellant's person, or that she was in fear of such offensive conduct. Appellant maintains that she was interrogated and badgered by appellees while in the hotel room. Again, there is no basis for this assertion. As we have noted above, appellant testified at her deposition that the Red Lobster representatives departed from the hotel room and thereafter the interview was conducted only by the polygraphist, appellee Carroll.

There being no material issues of fact, and appellees being entitled to judgment as a matter of law on the enumerated claims, we conclude that the trial court did not err when it sustained

---

[5] The manager of the Reading Road Red Lobster was later convicted of theft for taking the money which caused the cash shortages.

[6] Appellant testified at her deposition that she had been originally scheduled to take the examination at 6:00 p.m. on September 18, 1980. Appellant arrived at the place of the examination at 9:20 p.m.

the appellees' respective motions for summary judgment. Accordingly, the assignment of error is overruled and the judgment of the court below is affirmed.

*Judgment affirmed.*

DOAN, P.J., BLACK and HILDE-BRANDT, JJ., concur.