**SHARP, Appellant,**

v.

**CLEVELAND CLINIC, Appellee.**

[Cite as *Sharp v. Cleveland Clinic*, 176 Ohio App.3d 226, 2008-Ohio-1777.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2007–T–0102.

Decided April 11, 2008.

Littler Mendelson, P.C., Robert M. Wolff, and Lisa A. Orlando, for appellee.

Raymond J. Masek, for appellant.

———————

TIMOTHY P. CANNON, Judge.

{¶ 1} Appellant, Brianna Sharp, R.N., appeals the judgment entered by the Trumbull County Court of Common Pleas. The trial court entered summary judgment in favor of appellee, the Cleveland Clinic.

{¶ 2} Sharp is a registered nurse, and she began working at the Cleveland Clinic in that capacity in March 2006. On several occasions in April and May 2006, Sharp was counseled by her supervisors about documentation errors regarding narcotic medications. Due to the documentation errors, certain amounts of narcotic medications were unaccounted for. One instance of improper documentation occurred when Sharp removed three 100–milligram doses of Fentanyl, a narcotic, during a single shift. Each time, however, she administered only 25 milligrams of the drug to each of the three patients. The remaining 75 milligrams of each dose were not properly documented as being wasted and were not otherwise accounted for.

{¶ 3} On May 24, 2006, during her shift, Sharp was called into a meeting with Nurse Manager Rosslyn VanDenBossche, Assistant Nurse Manager Rick Haire, and Kevin Peterca, a representative from the Employee Assistance Program. Haire informed Sharp that there were suspicions that she was possessing and/or using controlled substances. Sharp denied using any drugs and consented to a drug test, in order to clear her name. Sharp and VanDenBossche walked to the emergency room at the Cleveland Clinic for the purpose of the drug test.

{¶ 4} In the emergency room, blood and urine samples were collected from Sharp. Sharp acknowledged that there was nothing unusual with the actual collection methods of these samples. After the samples were collected, Sharp and VanDenBossche waited in the emergency room for several minutes. Sharp asked if she could go home. VanDenBossche told Sharp that she was free to leave, but that she was not permitted to drive her car. Sharp asked what would happen if she tried to leave in her car on her own, and the charge nurse in the emergency room told her that she would be arrested. Sharp eventually called

her boyfriend, who lived in Trumbull County, and he agreed to drive to Cleveland to pick her up.

{¶ 5} At some point, VanDenBossche's shift ended, and another nurse was sent to the emergency room to continue the one-on-one observation of Sharp. Thereafter, Sharp requested permission to go to her car to retrieve some personal belongings. Sharp was told that she was not allowed to walk to her car. Then, two Cleveland Clinic police officers arrived in the emergency room and told Sharp that there was a police car waiting outside to take her to her car. Sharp and her supervisor got into the back of the police car, and a female police officer drove Sharp to her car. Sharp retrieved her personal items, and the police officer drove Sharp and her supervisor back to the emergency room.

{¶ 6} After returning to the emergency room, Sharp asked to have a cigarette. One of the police officers told her she could go outside to smoke, but that she had to stay in a certain area. In addition, her supervisor went outside with her.

{¶ 7} Eventually, Sharp's boyfriend arrived and picked her up. They went to a local restaurant for dinner. Afterwards, Sharp retrieved her car from the parking garage and drove to her home in Trumbull County.

{¶ 8} Although the drug tests were negative, Sharp's employment was terminated due to her performance.

{¶ 9} Sharp filed a complaint against the Cleveland Clinic alleging five causes of action: (1) unlawful confinement, (2) defamation, (3) intentional infliction of emotional distress, (4) unjust enrichment, and (5) negligence. The Cleveland Clinic filed an answer to Sharp's complaint, wherein it denied the substantive allegations of the complaint.

{¶ 10} The Cleveland Clinic filed a motion for summary judgment in regard to all of the claims in Sharp's complaint. The Cleveland Clinic attached portions of VanDenBossche's, Haire's, and Sharp's depositions to its motion. Sharp filed a response in opposition to the Cleveland Clinic's motion for summary judgment. Thereafter, the Cleveland Clinic filed a reply brief in support of its motion for summary judgment. The trial court granted the Cleveland Clinic's motion for summary judgment.

{¶ 11} Sharp raises the following assignments of error:

{¶ 12} "[1.] The trial court erred in holding that the acts of appellee police officers did not constitute false imprisonment.

{¶ 13} "[2.] The trial court erred in it's [sic] holding that appellant was free to move about with no threat of force sufficient to invoke false imprisonment."

{¶ 14} Due to the similar nature of Sharp's assigned errors, they will be addressed together.

{¶ 15} Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party. Civ.R. 56(C). The standard of review for the granting of a motion for summary judgment is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

{¶ 16} "Since summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control or as a 'little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In *Dresher v. Burt*, the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112 [526 N.E.2d 798].

{¶ 17} "* * *

{¶ 18} "The Supreme Court in *Dresher* went on to hold that when *neither* the moving nor nonmoving party provides evidentiary materials demonstrating that there are no material facts in dispute, the moving party is not entitled to a judgment as a matter of law as the moving party bears the initial responsibility of informing the trial court of the basis for the motion, 'and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' [*Dresher v. Burt,* 75 Ohio St.3d at 296, 662 N.E.2d 264.]" (Emphasis sic.) *Welch v. Ziccarelli,* 11th Dist. No. 2006–L–229, 2007-Ohio-4374, 2007 WL 2410102, at ¶ 40–42.

{¶ 19} Sharp appeals only that portion of the trial court's judgment entry regarding her false-imprisonment claim. She does not challenge the trial court's entry of summary judgment on her other causes of action.

{¶ 20} False imprisonment occurs when a person confines another intentionally without privilege and against her consent within a limited area for any appreciable time, however short. *Bennett v. Ohio Dept. of Rehab. & Corr.* (1991), 60 Ohio St.3d 107, 109, 573 N.E.2d 633. "The essence of the tort is depriving someone of his or her liberty without lawful justification." *Monrean v. Higbee Dept. Stores, Inc.* (Dec. 29, 2000), 11th Dist. No. 99–T–0099, 2001 WL 20808, at *4, citing *Mullins v. Rinks, Inc.* (1971), 27 Ohio App.2d 45, 48, 56 O.O.2d 218, 272 N.E.2d 152.

{¶ 21} The focus of this matter is whether Sharp was ever confined by any Cleveland Clinic employees. "Confinement consists of a 'total detention or restraint upon [the plaintiff's] freedom of locomotion, imposed by force or threats.'" *Davis v. Peterson* (Mar. 29, 1995), 9th Dist. No. 16883, 1995 WL 134796, at *2, quoting *Toledo v. Lowenberg* (1955), 99 Ohio App. 165, 167, 58 O.O. 272, 131 N.E.2d 682. Since a threat may constitute confinement, the lack of physical force does not defeat a false-imprisonment claim. *Ware v. Shin*, 6th Dist. No. L–05–1130, 2006-Ohio-976, 2006 WL 513960, at ¶ 18.

{¶ 22} We will individually address the events of May 24, 2006, to determine whether any of them amount to confinement.

{¶ 23} Regarding the drug tests themselves, Sharp was not confined. When an individual voluntarily agrees to be in a certain place, that individual is not confined, since she is not held against her will. *Denovich v. Twin Valu Stores, Inc.* (Feb. 23, 1995), 8th Dist. Nos. 67580 and 67922, 1995 WL 79600, at *4. Sharp voluntarily submitted to the tests and stated in her deposition that the tests were conducted in a standard manner. Therefore, she was not confined during the tests.

{¶ 24} Sharp stated that she waited in the emergency room after the tests were conducted. When she asked if she could leave, she was informed that she was free to leave, but that she was not permitted to drive her car. Sharp was informed that she would be arrested if she tried to leave in her own car. "A person is not confined when [she] voluntarily appears at a premises and is free to leave." *Condo v. B & R Tire Co.* (May 29, 1996), 7th Dist. No. 95 C.A. 166, 1996 WL 290963, at *1, citing *Walden v. Gen. Mills Restaurant Group, Inc.* (1986), 31 Ohio App.3d 11, 15, 31 OBR 25, 508 N.E.2d 168.

{¶ 25} In *Condo*, the plaintiff took his car to a mechanic to have his brakes inspected. The mechanic informed the plaintiff that his brakes were completely

worn out and quoted the plaintiff a price of the repairs. When the plaintiff declined the repairs and asked for his vehicle to be returned, the mechanic called the police and told them that the plaintiff intended to drive with inadequate brakes. The police arrived and told the plaintiff that he would be arrested if he tried to drive his car.

{¶ 26} In this matter, as was the case in *Condo,* the Cleveland Clinic's prohibition against Sharp driving was reasonable under the circumstances. The Cleveland Clinic had reason to believe that Sharp was diverting narcotics for her personal use and, as a result, was under the influence of narcotics during the relevant time period. Thus, the employees of the Cleveland Clinic had reasonable concerns regarding Sharp's ability to safely operate a motor vehicle. Further, as was the case in *Condo,* Sharp was not prohibited from leaving the Cleveland Clinic; she was prohibited only from driving her car. As the trial court noted, Sharp could have called a taxi, taken public transportation, or called a friend for a ride. In fact, Sharp called her boyfriend for a ride, and she left the emergency room with him. Since Sharp was free to leave the emergency room, she was not confined during that time.

{¶ 27} Sharp was under one-on-one observation with a supervisor from the nursing department while she was in the emergency room. " '[F]alse imprisonment may not be predicated on a person's unfounded belief that [she] was restrained.' " *Monrean v. Higbee Dept. Stores, Inc.,* 2001 WL 20808, at *4, citing *Lester v. Albers Super Markets, Inc.* (1952), 94 Ohio App. 313, 317, 51 O.O. 457, 114 N.E.2d 529. The Cleveland Clinic had a right to supervise its employee on its premises. Again, Sharp voluntarily agreed to the drug tests, and the fact that her supervisor was monitoring her during that time does not transform her voluntary actions into confinement. Neither of the supervisors from the nursing department physically prohibited or threatened Sharp from leaving the Cleveland Clinic campus after the drug tests. At most, the nurse supervisors informed Sharp that she was not permitted to drive her personal vehicle. However, as noted above, this restriction does not amount to confinement.

{¶ 28} Sharp argues that the fact that police officers were present in the emergency room escalated the situation into one of confinement. We disagree. The evidence suggests that the officers appeared in response to Sharp's request to retrieve personal items from her car. The officers were employed by the Cleveland Clinic and had a right to be in the emergency room. Also, the fact that Sharp was ordered by the officers on where she should stand when she smoked a cigarette does not amount to confinement. *Condo v. B & R Tire Co.,* at *1, citing *Bailie v. Miami Valley Hosp.* (1966), 8 Ohio Misc. 193, 195, 37 O.O.2d 259, 221 N.E.2d 217.

**234**

{¶ 29} Finally, we will address the incident in which Sharp was driven by a Cleveland Clinic police officer to her car. Sharp contends that she should have been permitted to walk to her car, which was several blocks away. As the Cleveland Clinic notes, Sharp had requested to leave in her car on multiple occasions, so the employees in the emergency room could have reasonably believed that Sharp's request to walk to her car was a pretext to her driving home in her car. In order to accommodate Sharp's request to retrieve items out of her personal car, the Cleveland Clinic provided a female police officer to drive Sharp to her car. The fact that Sharp was in a police car does not, per se, equal confinement. This is especially true in this case, since the officer did not threaten or touch Sharp, Sharp's nursing supervisor rode in the vehicle with her, and the trip was facilitated to accommodate Sharp. If Sharp did not want to ride in the police car, she could have easily forgone the trip and left her personal items, a garage door opener and dirty dishes, in her car. In fact, since Sharp sneaked into the parking garage after dinner and retrieved her car, it was not essential that she get the personal items at the time she did. Accordingly, Sharp was not confined when she voluntarily rode in the police car, which was provided by the Cleveland Clinic to accommodate Sharp's personal request.

{¶ 30} At no time on May 24, 2006 was Sharp confined by employees of the Cleveland Clinic. Since there are no genuine issues of material fact on this point, the trial court did not err by entering summary judgment in favor of the Cleveland Clinic on Sharp's false-imprisonment claim.

{¶ 31} Sharp's assignments of error are without merit.

{¶ 32} The judgment of the trial court is affirmed.

Judgment affirmed.

TRAPP, J., concurs.

O'TOOLE, J., dissents.

COLLEEN MARY O'TOOLE, J., dissenting.

{¶ 33} I respectfully dissent.

{¶ 34} First, I respectfully suggest that the majority ignores the Ohio Supreme Court's holding that once the privilege to detain a person expires, liability for false imprisonment arises. Cf. *Bennett v. Ohio Dept. of Rehab. & Corr.* (1991), 60 Ohio St.3d 107, 573 N.E.2d 633, syllabus. In this case, Nurse Sharp agreed to drug tests following the accusation that she was diverting narcotics. The clinic may be said to have possessed a privilege, therefore, to limit or confine her movements in some fashion until those tests were completed. However, it points to no authority allowing it to limit Nurse Sharp's movements once the tests were

completed. Rather, it falls back on the assertion that those limitations were justified by the suspicion that she was on drugs and thus could not operate her vehicle safely.

{¶ 35} The reasoning is tautological. The clinic points to no evidence by a qualified expert—such as a physician or drug-addiction specialist—that Nurse Sharp exhibited behavioral characteristics typical of a person on narcotics and incapable of driving safely. The suspicion of drug use was founded on the discrepancies in her recordkeeping, not her behavior. If founded on the latter, one reasonably might ask how the clinic could allow Nurse Sharp to work for half a shift the day of this incident before pulling her off the floor. In concluding that the clinic had reasonable cause to prevent Nurse Sharp from driving following the conclusion of her voluntary drug tests, the majority, like the trial court, breaches the confines of Civ.R. 56. It weighs the evidence, rather than construing it in her favor.

{¶ 36} Similarly, I would find that a genuine issue of material fact exists regarding whether Nurse Sharp was falsely imprisoned following the appearance of the clinic's police in the emergency room. An implied threat of the use of force to limit a person's freedom of movement is sufficient to establish a claim for false imprisonment. *Ware v. Shin,* 6th Dist. No. L–05–1130, 2006-Ohio-976, 2006 WL 513960, at ¶ 18. As many Ohio courts have pointed out, the threat to call the police or security, or the appearance of police or security at the scene of a dispute, necessarily implies that force will be used. Id. at ¶ 20 (beauty salon clerk's threat to call police is sufficient to establish genuine issue of material fact whether customer was confined for purposes of false-imprisonment claim); *Kalbfell v. Marc Glassman, Inc.,* 7th Dist. No. 02 CO 5, 2003-Ohio-3489, 2003 WL 21505264, at ¶ 22 (store security guard following alleged shoplifter to store management office and accusing her of shoplifting and being banned from store is sufficient to establish confinement for purposes of false-imprisonment claim); *Mitles v. Young* (1978), 59 Ohio App.2d 287, 293, 13 O.O.3d 286, 394 N.E.2d 335.

{¶ 37} *Condo v. B & R Tire Co.* (May 29, 1996), 7th Dist. No. 95 C.A. 166, 1996 WL 290963, relied upon by the majority to establish that the appearance of the police at the scene of a dispute does not constitute confinement, is distinguishable. In that case, the auto repair shop had determined that the appellant's brakes were unsafe for driving and called the police only when the appellant evinced his purpose of continuing to use the car. Id. at 1–2. Thus, there was objective evidence the appellant was preparing to commit a hazardous, and criminal, act, justifying the auto repair shop in calling the police, and the police, in responding. In this case, there was only evidence that Nurse Sharp's recordkeeping was poor and that she was nervous. These facts might—or might

not—indicate that she was diverting narcotics for personal use. The resolution of factual disputes requires trial by jury, not disposition in summary proceedings.

{¶ 38} I would reverse the judgment and remand this matter for trial.