[Cite as *Kulich-Grier v. OhioHealth Corp.*, 2014-Ohio-3931.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Carrie Kulich-Grier, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 14AP-26 |
| v. | : | (C.P.C. No. 12CV03-2753) |
| OhioHealth Corporation et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on September 11, 2014

*Jendretzsky Law LLC*, and *Michel Jendretzsky*, for appellant.

*Reminger Co., LPA*, and *Warren M. Enders*, for appellees.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Plaintiff-appellant, Carrie Kulich-Grier, appeals a judgment of the Franklin County Court of Common Pleas granting summary judgment to defendant-appellee, the Ohio Hospital for Psychiatry ("OHP"). For the following reasons, we affirm.

{¶ 2} Kulich-Grier is a registered nurse who previously worked in the intensive care unit ("ICU") at Grant Medical Center ("Grant"). On January 8, 2011, Kulich-Grier attended the wedding of a work colleague. According to Kulich-Grier, after the wedding, another co-worker, Doug Johnson, sexually assaulted her. Later, when working her shift in the ICU, Kulich-Grier overheard Johnson discussing the sexual assault with other nurses. During the conversation, Johnson disparaged Kulich-Grier's body, including her

genitalia.  Kulich-Grier subsequently heard other nurses gossiping about her in a malicious manner.

{¶ 3}  On the night of March 5, 2011, Kulich-Grier met with Leigh Ann Germani, the clinical nurse manager who was Kulich-Grier's direct supervisor, to discuss the situation.  Germani asked Barbara Rathbun, a psychiatric liaison, and Joyce Taylor, the night supervisor, to also attend the meeting.  At the meeting, Kulich-Grier described the sexual assault, as well as the conversations about her that she had overheard while working in the ICU.  As she was talking, Kulich-Grier became upset and cried.  She then had a panic attack and started gasping for air.  Germani, Rathbun, and Taylor convinced her to go to Grant's emergency room ("ER").

{¶ 4}  In the ER, a physician prescribed and a nurse administered to Kulich-Grier 1 milligram of Ativan, an anti-anxiety medication, and 25 milligrams of Seroquel, an anti-psychotic medication.  In the early morning hours of March 6, 2011, the ER physician decided to involuntarily commit Kulich-Grier to a mental hospital.  In the application for emergency admission to OHP, the physician stated that Kulich-Grier was a mentally ill person subject to hospitalization by court order as that phrase is defined in R.C. 5122.01(B)(3) and (4).  The physician also stated that Kulich-Grier was experiencing auditory hallucinations and paranoid delusions, and that she was irrational and exercising poor judgment.

{¶ 5}  Kulich-Grier arrived at OHP at approximately 6:00 a.m. on March 6, 2011.  According to Kulich-Grier, she was so sedated she could not see.  An OHP staff member asked her to sign various forms.  Although no one explained the forms to Kulich-Grier, she nonetheless signed them.  One of the forms was entitled "Voluntary Admission Form," and stated, "I voluntarily request and accept admission to the psychiatric service of Ohio Hospital for Psychiatry."  Later, at her deposition, Kulich-Grier maintained that, when she signed the voluntary admission form, she did not know what it was and did not understand it.

{¶ 6}  Several hours after Kulich-Grier signed the voluntary admission form, Dr. Angela Wallenbrock met with Kulich-Grier to assess her.[1]  Kulich-Grier asked Dr.

---

[1] OHP disputes Kulich-Grier's timeline of events.  According to OHP, Dr. Wallenbrock spoke with Kulich-Grier before she signed the voluntary admission form.  As this case is before us on appeal from the grant of summary judgment against Kulich-Grier, we construe the facts in Kulich-Grier's favor.

Wallenbrock if she had to stay at OHP, and Dr. Wallenbrock responded that, as an involuntary patient, Kulich-Grier was required to remain at OHP for 72 court hours.[2] After personally assessing Kulich-Grier and reviewing her medical records, Dr. Wallenbrock diagnosed her with a psychotic disorder, not otherwise specified; acute stress reaction; depressive disorder, not otherwise specified; obsessive-compulsive disorder; and attention deficit hyperactivity disorder, inattentive type. With Kulich-Grier's agreement, Dr. Wallenbrock prescribed her two anti-depressants.

{¶ 7} Kulich-Grier remained a patient of OHP until her discharge on the afternoon of March 10, 2011. While at OHP, Kulich-Grier voluntarily took the medications prescribed to her.

{¶ 8} On March 2, 2012, Kulich-Grier filed an action against OhioHealth Corporation, which owns and operates Grant, as well as OHP.[3] Kulich-Grier alleged claims for false imprisonment and intentional infliction of emotional distress against OHP.

{¶ 9} After conducting discovery, both OHP and Kulich-Grier moved for summary judgment. OHP requested summary judgment on both of Kulich-Grier's claims, while Kulich-Grier sought summary judgment solely on her claim for false imprisonment. In a judgment dated December 12, 2013, the trial court granted OHP's motion for summary judgment and denied Kulich-Grier's motion for summary judgment.

{¶ 10} Kulich-Grier now appeals the December 12, 2013 judgment, and she assigns the following errors:

> I. The trial court erred in granting summary judgment to appellee Ohio Hospital for Psychiatry (OHP), finding that Appellant failed to present any evidence that OHP's conduct was extreme and outrageous for purposes of establishing an intentional infliction of emotional distress claim.
>
> II. The trial court erred in granting summary judgment to appellee OHP and denying Appellant the same, finding that appellee had lawful privilege to confine Appellant under R.C. 5122.10.

---

[2] As further explicated below, R.C. 5122.10 allows a mental health services provider to detain a person for "three court days" in certain circumstances. Court days exclude weekends. R.C. 5122.01(L).

[3] Kulich-Grier and OhioHealth have settled Kulich-Grier's claims against OhioHealth.

> III. The trial court erred in granting appellee OHP summary judgment and denying Appellant the same, finding that appellee was entitled to immunity under R.C. 5122.34.[4]

{¶ 11}    Kulich-Grier's assignments of error challenge the trial court's ruling on the parties' summary judgment motions.  A trial court will grant summary judgment under Civ.R. 56 when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29.  Appellate review of a trial court's ruling on a motion for summary judgment is de novo.  *Hudson* at ¶ 29.  This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 12} By her first assignment of error, Kulich-Grier argues that the trial court erred in granting OHP summary judgment on her claim for intentional infliction of emotional distress.  We disagree.

{¶ 13} Liability arises for intentional infliction of emotional distress if a person's "extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St.3d 369 (1983), syllabus.  To prevail on such a claim, the plaintiff must prove:   (1) the defendant either intended to cause serious emotional distress, or knew or should have known that its conduct would result in serious emotional distress, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's actions proximately caused psychological injury to the plaintiff, and (4) the plaintiff suffered serious emotional distress of a nature no reasonable person could be expected to

---

[4] In her appellate brief, Kulich-Grier also assigned error regarding the trial court's ruling on OhioHealth's motion for summary judgment.  As those assignments of error are no longer pending due to the settlement between Kulich-Grier and OhioHealth, we have renumbered Kulich-Grier's assignments of error.  Thus, the assignments of error originally numbered VIII, XII, and XIII are now numbered I, II, and III.

endure.  *Rhoades v. Chase Bank*, 10th Dist. No. 10AP-469, 2010-Ohio-6537, ¶ 15.
Conduct does not qualify as extreme and outrageous unless it is:

> so outrageous in character, and so extreme in degree, as to go
> beyond all possible bounds of decency, and to be regarded as
> atrocious, and utterly intolerable in a civilized community.
> Generally, [liability only exists if] the case is one in which the
> recitation of the facts to an average member of the community
> would arouse his resentment against the actor, and lead him
> to exclaim, "Outrageous!"

*Yeager* at 375, quoting Restatement of the Law 2d, Torts, Section 46, Comment b, at 73
(1965).

{¶ 14} Here, Kulich-Grier premises her intentional infliction of emotional distress
claim on OHP's alleged failure to comply with R.C. 5122.10, which specifies the
procedures for emergency hospitalization of a mentally ill person.  Pursuant to R.C.
5122.10, specified individuals, including a licensed physician, may take a person into
custody if the specified individual "has reason to believe that the person is a mentally ill
person subject to hospitalization by court order under division (B) of section 5122.01 of
the Revised Code, and represents a substantial risk of physical harm to self or others if
allowed to remain at liberty pending examination."  The mentally ill person must be
transported to a mental health services provider, and the provider's staff must examine
the person within 24 hours of that person's arrival at the institution.  R.C. 5122.10; *In re
Miller*, 63 Ohio St.3d 99, 103 (1992).  After examination, the chief clinical officer of the
institution has two options.[5]  First, if the chief clinical officer believes that the person *is
not* a mentally ill person subject to hospitalization by court order, then the chief clinical
officer must release or discharge the person immediately (unless a court has already
issued a temporary detention order).  R.C. 5122.10; *Miller* at 103.  Second, if the chief
clinical officer believes that the person *is* a mentally ill person subject to hospitalization by
court order, then the chief clinical officer may detain the person for up to three court days
following the date of examination.  R.C. 5122.10; *Miller* at 103.  During that three-day
period, the chief clinical officer may admit the person as a voluntary patient (if the patient
makes a written application for voluntary admission pursuant to R.C. 5122.02), or the

---

[5] "The chief clinical officer may delegate to the attending physician responsible for a patient's care the
duties imposed on the chief clinical officer by [R.C. Chapter 5122]."  R.C. 5122.01(K).  Here, it appears
that OHP's chief clinical officer delegated his or her duties under R.C. 5122.10 to Dr. Wallenbrock.

chief clinical officer may file an affidavit under R.C. 5122.11, thereby initiating court commitment proceedings. R.C. 5122.10; *Miller* at 103-04. If the chief clinical officer neither admits the person as a voluntary patient nor files an affidavit under R.C. 5122.11, the chief clinical officer must discharge the person at the end of the three-day period. R.C. 5122.10; *Miller* at 104.

{¶ 15} Kulich-Grier asserts that OHP violated R.C. 5122.10 by giving her the voluntary admission form to sign prior to Dr. Wallenbrock's examination of her. Additionally, Kulich-Grier contends that Dr. Wallenbrock unlawfully detained her for three days without first determining that she was a mentally ill person subject to hospitalization by court order. Even if we assume that Kulich-Grier's allegations are correct, we conclude no reasonable fact finder could find OHP's conduct was extreme and outrageous.

{¶ 16} With regard to the voluntary admission form, the record lacks any evidence that OHP asked Kulich-Grier to sign the form in order to short-circuit the R.C. 5122.10 process. Even after Kulich-Grier signed the form, Dr. Wallenbrock performed the required initial evaluation to determine whether to release or detain Kulich-Grier. Moreover, there is no evidence that OHP sought Kulich-Grier's signature knowing that she was unable to read and understand the form. Lisa Mettke, an OHP nurse, testified that upon Kulich-Grier's arrival at OHP, she was tearful and anxious, but she "had a full [a]ffect and she verbalized understanding of the questions that were being asked." (Mettke deposition, at 61.)

{¶ 17} With regard to the decision to detain her, Kulich-Grier concedes that Dr. Wallenbrock did not act maliciously. According to Dr. Wallenbrock's affidavit testimony, she diagnosed Kulich-Grier with a variety of mental illnesses and admitted Kulich-Grier as an involuntary patient based on her professional judgment. Kulich-Grier does not dispute that she was suffering from mental illness when admitted to OHP. Thus, while Dr. Wallenbrock did not clearly make the specific finding required by R.C. 5122.10 for involuntary commitment, no reasonable fact finder could conclude that her actions were atrocious or outside the bounds of decency.

{¶ 18} Because Kulich-Grier cannot prove that OHP's conduct was extreme and outrageous, the trial court did not err in granting OHP summary judgment on her claim

for intentional infliction of emotional distress. Accordingly, we overrule Kulich-Grier's first assignment of error.

{¶ 19} By her second and third assignments of error, Kulich-Grier argues that the trial court erred in granting OHP summary judgment, and denying her summary judgment, on her claim for false imprisonment. We disagree.

{¶ 20} False imprisonment occurs when a person intentionally confines another within a limited area for any appreciable length of time, without lawful privilege and against the other's consent. *Bennett v. Ohio Dept. of Rehab. & Corr.*, 60 Ohio St.3d 107, 109 (1991). To establish a claim for false imprisonment, the plaintiff must first demonstrate that he or she was confined. *Ripley v. Montgomery*, 10th Dist. No. 07AP-6, 2007-Ohio-7151, ¶ 39. A presumption then arises that the confinement was unlawful, and the defendant must carry the burden to show legal justification. *Id.* If a plaintiff fails to offer proof of confinement, the cause of action fails as a matter of law. *Id.* at ¶ 40.

{¶ 21} Confinement consists of a total restraint upon the plaintiff's freedom of locomotion, imposed by force or threats. *Sharp v. Cleveland Clinic*, 176 Ohio App.3d 226, 2008-Ohio-1777, ¶ 21 (11th Dist.); *Witcher v. Fairlawn*, 113 Ohio App.3d 214, 217 (9th Dist.1996). Mere submission to verbal direction in the absence of force or threat of force does not constitute confinement. *King v. Aultman Health Found.*, 5th Dist. No. 2009 CA 00116, 2009-Ohio-6277, ¶ 55; *Ripley* at ¶ 40.

{¶ 22} Here, Kulich-Grier's attack on the trial court's judgment focuses on OHP's alleged lack of privilege to detain her. By focusing on OHP's lack of privilege, Kulich-Grier avoids addressing her own obligation to first provide evidence that OHP confined her against her will. Our review of the record discloses no evidence of confinement. It is undisputed that Kulich-Grier signed the voluntary admission form. Kulich-Grier testified that OHP staff told her that she could not leave, but she did not present any evidence that OHP enforced its direction with force or threats, either explicit or implied. Absent such evidence, Kulich-Grier cannot prevail on her claim for false imprisonment.[6] Accordingly,

---

[6] We need not address the issue of immunity raised in Kulich-Grier's third assignment of error because Kulich-Grier cannot prevail on a false imprisonment claim without evidence of confinement. Therefore, even if OHP was not immune from liability, OHP is still entitled to summary judgment on Kulich-Grier's false imprisonment claim.

we conclude that the trial court did not err in granting OHP summary judgment, and we overrule Kulich-Grier's second and third assignments of error.

{¶ 23} For the foregoing reasons, we overrule all of Kulich-Grier's assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

————————————