STRANCH, Circuit Judge,
dissenting.
The majority opinion divides the encounter between Agent Shaver and the plaintiffs into two parts: the period leading up to Ms. Saucedo-Carrillo’s admission that her visa had expired and the period following that admission. I agree with the majority’s conclusion that after that admission Agent Shaver had a lawful privilege to detain both plaintiffs, as Ms. Carrillo-Vasquez had previously stated that she had the same visa as Ms. Saucedo-Carrillo. I cannot agree to affirm the grant of summary judgment to the Government, however, because under the totality of the facts before us and the definition of confinement under Ohio law, a reasonable trier of fact could conclude that Agent Shaver confined the plaintiffs at the gas station well before Ms. Saucedo-Carrillo’s admission gave him a privilege to do so. I therefore respectfully dissent.
Here, the reviewing court “must view the facts and any inferences reasonably drawn from them in the light most favorable to the nonmoving party,” the plaintiffs in this case. Griffith v. Coburn, 473 F.3d 650, 655 (6th Cir.2007). The pertinent facts are as follows.
Upon making eye contact with Ms. Sau-cedo-Carrillo, Agent Shaver parked his vehicle perpendicularly across the front of her truck in a manner that made it impossible for her to pull the truck forward to leave, though she could have exited in reverse. Agent Shaver then immediately approached Ms. Saucedo-Carrillo on foot and aggressively asked for her ID. She gave him a Michigan driver’s license, and he next asked her for her “papers,” and asked what kind of passport she came with and whether she came in on a tourist visa. As Agent Shaver questioned Ms. Saucedo-Carrillo, he held onto her license and stood less than one meter away from her.
According to Ms. Saucedo-Carrillo, Agent Shaver was “very aggressive” from the outset and “was very harsh. It wasn’t kind at all. He was just real harsh with his questions. Where do you live? How far do you live? He wasn’t kind at all.” R. 28-3, PagelD# 340-41. She never declined to answer any of his questions because she “was afraid of him” due to his aggressiveness and the way he parked his truck in front of hers. She explained that “I thought maybe he was going to let me go, but he didn’t let me go.” Id. at 348.
Ms. Carrillo-Vasquez also indicated that Agent Shaver “got real aggressive with us” and that “He wasn’t very kind. He didn’t even say hello. One is accustomed to saying hello and he didn’t say hello. He just asked for an ID.” R. 28-2, Pa-gelD# 259-60. She, too, said that she never declined to answer any of his questions, and said that this was because “he was harsh. And he scared me.” Id. at 268. Though Agent Shaver never touched the plaintiffs, Carrillo-Vasquez testified that “his authority” scared her, and “the way he stopped in front of us.” When he *205 got out of the car, she asked herself “Well, what did we do? What did we do?” Id.
The Ohio intentional tort of false imprisonment requires (1) an intentional confinement (2) taking place in a limited area (3) for any “appreciable time, however short” (4) without lawful privilege and (5) against the detainee’s consent. Bennett v. Ohio Dept. of Rehab. & Corr., 60 Ohio St.3d 107, 573 N.E.2d 633, 636 (1991)
Ohio courts employ an objective standard to determine whether a given set of facts constitutes false imprisonment. “[Fjalse imprisonment may not be predicated on a person’s unfounded belief that [she] was restrained.” Sharp v. Cleveland, Clinic, 176 Ohio App.3d 226, 891 N.E.2d 809, 814 (2008). Rather, to prevail a plaintiff must demonstrate that “a reasonable person could believe that confinement occurred.” Kalbfell v. Marc Glassman, Inc., 2003-Ohio-3489, 2003 WL 21505264, at *5 (Ohio Ct.App. June 26,2003); accord Ware v. Shin, 2006-Ohio-976, 2006 WL 513960, at *4 (Ohio Ct.App. March 3, 2006).[5] Under Ohio law, “submission to the mere verbal direction of another, unaccompanied by force or threats of any character, cannot constitute false imprisonment.” Bau-man v. Bob Evans Farms, Inc., 2007-Ohio-145, 2007 WL 96969, at *5 n.4 (Ohio Ct.App. Jan. 16, 2007); see also Ferraro v. Phar-Mor, Inc. No. 98 CA 48, 2000 WL 459686, at *4 (Ohio Ct.App. April 7, 2000) (same). However, the word “threat” as used in Ferraro does “not necessarily include only an express or explicit threat.” Kalbfell, 2003 WL 21505264, at *5. An “implicit threat ... projected through ... circumstances including a display of authority” can also create false imprisonment. Id.
Kalbfell holds that implied restraint based on a security guard’s display of authority can meet the elements of Ohio’s false imprisonment tort. Id. at *4-5. The decision upheld on appeal a judgment in favor of a plaintiff who was mistakenly identified by store employees as a repeat shoplifter previously banned from the premises. Id. at *1. After misidentifying the plaintiff, the employees publicly summoned store security to the woman’s location. Id. A uniformed guard told her to “[c]ome with me,” and escorted her to a back office by walking behind her without touching her. Id. The guard made a phone call, which the woman believed was to the police, and accused her of shoplifting. Id. at *5. She waited in the office for twenty minutes, until a manager told the security guard that he could not ban people from the store. Id. at *1. The guard then apologized and the woman left the room. Id. The Ohio Court of Appeals found that a reasonable person could believe confinement occurred under these facts. Id. at *5. Distinguishing Ferraro, a case dismissed on summary judgment concerning a store employee’s brief detention of a shopper at a checkout counter, the Kalbfell court noted that the threat of force or restraint is stronger when uniformed security is involved than when (as in Ferraro) a non-security employee gives a customer an order. Id.
Kalbfell found additional support for its holding in the Ohio Jury Instructions concerning false arrest and false imprisonment. Id. at *4. The instructions define both false arrest and false imprisonment *206 as the “unlawful” “restraint” or “control” by one person over the physical liberty of another, and the instructions provide that the restraint must include an “actual or implied” “threat of force” or “display of authority.” Id. (citing former O.J.I. 309.01 (currently O.J.I. 441.01)) (emphasis added). Restraint occurs “if the words, conduct, or display of authority are such as to cause or give rise to a fear or apprehension of force and to overcome the plaintiffs- will.” Kalbfell, 2003 WL 21505264, at *4 (citing O.J.I. 309.01 (now 441.01)).
Earlier Ohio caselaw also indicates that false imprisonment may include implicit threats conveyed through a display of authority. In Mitles v. Young, the plaintiffs employer accused him of stealing over a thousand dollars from the business and summoned the police. 59 Ohio App.2d 287, 394 N.E.2d 335, 335 (1978). After the employer and a police officer spoke out of the plaintiffs earshot, the officer approached the plaintiff and said, “Will you come with me, please.” Id. at 337. The plaintiff agreed and the officer took him to the station and left him in a holding cell for several hours before releasing him without charges. Id. Appealing the jury verdict for the plaintiff on false imprisonment, the employer argued that there was no arrest because the plaintiff had voluntarily accompanied the officer. Id. at 336. The appellate court upheld the jury’s verdict, noting that whether the officer’s statement “was a request or a command depends on the intonation of the officer’s voice. It is certain that one accused of being responsible for a large money shortage by his employer would hardly be brave enough to resist such a display of authority.” Id. at 337.
The threat in question, moreover, need not be the threat of violence — a threat to a plaintiffs personal liberty can suffice for a jury to find false- imprisonment. Ware, 2006 WL 513960, at *3. In Ware, the plaintiff set off a store’s alarm as she passed through the front door with her purse. Id. at *1. A clerk stopped her and asked to check her purse. Id. She handed him the purse and he found no merchandise, but when it passed through the door the alarm sounded a second time. Id. The clerk tried to take her purse a second time, but she refused to let him and told him to review the store’s security footage to see she didn’t take anything. Id. The clerk replied that he would call the police, and the plaintiff said “get to dialing” because “I don’t steal.” Id. In her deposition, the woman “explained that she felt detained because she knew if she left the store, the clerk would have taken her motor vehicle’s license plate number, and the police would have arrested her at her home.” Id. The police arrived about a half an hour later, searched her bag again, and found nothing from the store inside. Id. at *2. The plaintiff was released at that time. Id.
With regard to confinement, the Ware court noted that a finder of fact could . conclude either that the appellant was free to go or that the clerk’s summoning of the police and attempt to take the appellant’s purse constituted confinement. Id. at *3. With regard to consent, the court determined that the trier of fact could conclude either that the plaintiff consented to the search when she told the shopkeeper to “get to dialing,” or, based on the explanation given in her deposition about fearing future arrest, that she felt she could not leave. Id. Finding that these two issues presented a question of fact as to whether the plaintiff could have reasonably believed she was confined in the salon, the court reversed the grant of summary judgment to the defendant. Id. at *4.
Here, the majority concludes that “[tjhe availability of egress prevents any factfin-der from determining that Saucedo-Carril- *207 lo and Carrillo-Vasquez could have had a reasonable belief that they were confined.” Maj. Op. at 202. But Ohio law does not support such a per se rule: Kalbfell, Ware, and Mitles all indicate that courts cannot dismiss a false imprisonment claim simply because there is a physical means of egress open to the plaintiff, or because the threat to a plaintiffs person or liberty is implied rather than overt. The majority attempts to distinguish Kalbfell and Mitles on the basis that Agent Shaver did not direct the plaintiffs to move anywhere in particular before Ms. Saucedo-Carrillo’s admission. Maj. Op. at 203. But that isolated fact is not dispositive. As we see in Ware, a plaintiff can be confined where she stands — there is no requirement that a defendant must move a plaintiff in order to confine her. Instead, Ohio’s objective totality-of-the-circumstances test requires consideration of all facts relevant to an event to determine whether the plaintiff could reasonably believe she was confined.
Viewing the facts in the light most favorable to the plaintiffs, the relevant circumstances áre that 1) Agent Shaver turned on his turn signal and pulled into the gas station immediately after he and Ms. Saucedo-Carrillo made eye contact; 2) he parked perpendicularly across the front of her truck, blocking off her direct exit route; 3) he immediately exited his patrol vehicle and requested her identification in an “aggressive” manner without saying hello or anything else first; 4) after she produced her ID, he kept it in his possession and continued aggressively asking her targeted questions about her immigration status; 5) during this time he stood less than three feet away from her; and 6) the manner in which he parked his vehicle and his aggressive questioning frightened both plaintiffs.
I do not share the majority’s conviction that “[tjhese are the actions of a law-enforcement officer speaking with members of his community” as opposed to the actions of an officer “actively detaining a criminal suspect.” Maj. Op. at 203. Ms. Saucedo-Carrillo’s comment that she “thought maybe he was going to let me go, but he didn’t let me go” reveals her understanding that she was being detained during the stop. Considering the totality of the facts in the light most favorable to plaintiffs, I cannot conclude as a matter of law that this was merely an “unfounded belief.” See Sharp, 891 N.E.2d at 814. Rather, a reasonable trier of fact could determine that Agent Shaver’s actions were a display of authority that amounted to actual or implied restraint or control over the plaintiffs’ liberty. See Kalbfell, 2003 WL 21505264, at *4. Accordingly, I would reverse the district court’s order granting summary judgment to the Government and remand the case for further proceedings.

. The Ohio rule for citations to unpublished opinions provides that “[a]ll opinions of the courts of appeals issued after May 1, 2002 may be cited as legal authority and weighted as deemed appropriate by the courts without regard to whether the opinion was published or in what form it was published.” Ohio Supreme Court Rules for the Reporting of Opinions, Rep. Op, R. 3.4, Use of Opinions.